John A. Maher, Esq. (JM-6121)
450 Springfield Avenue
Summit, New Jersey 07901-3626
(908) 277-2444

[Other counsel on signature page]

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAWN SULLIVAN, ARRIGOTTI FINE JEWELRY and JAMES WALNUM, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>-against-<br><br>DB INVESTMENTS, INC., DE BEERS S.A., DE BEERS CONSOLIDATED MINES, LTD., DE BEERS A.G., DIAMOND TRADING COMPANY, CSO VALUATIONS A.G., CENTRAL SELLING ORGANIZATION, and DE BEERS CENTENARY A.G.,<br><br>        Defendants. | Civil Action Index No. 04-2819 (SRC)<br><br>**COMPLAINT AND JURY DEMAND**<br><br>**RECEIVED**<br>JUN 14 2004<br>AT 8:30 _____ M<br>WILLIAM T. WALSH<br>CLERK |

  Plaintiffs, by their attorneys, bring this civil action for damages and injunctive relief on behalf of themselves and all others similarly situated against the above-named defendants, and, demanding trial by jury, complain and allege as follows:

### Jurisdiction and Venue

1. This complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief for violations of Sections 1 and 2 of the Sherman Act, (15 U.S.C.

§§ 1 and 2), to recover damages under state antitrust and consumer protection laws and the costs of suit, including reasonable attorneys' fees, for the injuries that plaintiffs and a class of all others similarly situated sustained as a result of defendants' violations of those laws.

2. The Court has jurisdiction over the federal claim under 28 U.S.C. §§ 1331 and 1337. The Court has jurisdiction over the state court claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

3. Venue is proper in this district under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because defendants reside, transact business, are found in, or the claims arise in part, in this district.

## Plaintiffs

4. Plaintiff Shawn Sullivan is a resident of San Anselmo, California who indirectly purchased one or more polished diamonds indirectly from one or more defendants for end use, and not for resale, during the time period covered by this complaint.

5. Plaintiff Jim Walnum is a resident of San Ramon, California who indirectly purchased one or more polished diamonds indirectly from one or more defendants for end use, and not for resale, during the time period covered by this complaint.

6. Plaintiff Arrigotti Fine Jewelry has its principal place of business in Half Moon Bay, California and indirectly purchased polished diamonds from one or more defendants for resale during the time period covered by this complaint.

Defendants

7. DB Investments, Inc. ("DB Investments") is a Luxembourg corporation with an office and place of business at 9 rue Sainte Zithe, L-276, Luxembourg. DB Investments owns De Beers S.A.

8. De Beers S.A. ("DBSA") is a Luxembourg corporation with an office and place of business at 9 rue Sainte Zithe, L-22763, Luxembourg. DBSA owns defendants De Beers Consolidated Mines, Ltd. ("DB Consolidated") and De Beers Centenary A.G. ("DB Centenary").

9. De Beers Consolidated is a Republic of South Africa corporation with an office and place of business at 17 Charterhouse Street, London EC1N 6RA, United Kingdom.

10. De Beers Centenary is a Switzerland corporation with an office and place of business at Lagensandstrasse, 27 CH-6000, Lucerne, Switzerland.

11. Defendants DB Investments, DBSA, DB Consolidated and DB Centenary are sometimes referred to collectively herein as the "De Beers Group."

12. Diamond Trading Company ("DTC"), the marketing arm of the De Beers Group, is incorporated in the United Kingdom (in both England and Wales) with an office and place of business at 17 Charterhouse Street, London EC1N 6RA, United Kingdom.

13. CSO Valuations ("CSOV") is a Switzerland corporation with an office and place of business at 17 Charterhouse Street, London EC1N 6RA, United Kingdom.

14. Before 2000, the De Beers Group distributed diamonds through an entity called the "Central Selling Organization" ("CSO"). Plaintiffs believe that CSOV may be that entity. In 2000, DTC replaced CSO as the diamond-marketing arm of the De Beers Group.

15. The acts in this complaint, alleged herein to have been done by each defendant, were, upon information and belief, authorized, ordered or done by officers, agents, employees, or representatives of each while actively engaged in the management, direction, control or transaction of its business affairs.

### Co-Conspirators

16. Various other corporations, organizations, firms and individuals, not made defendants in this complaint, participated as co-conspirators in the violations alleged herein, and performed acts and made statements in furtherance thereof.

### Class Action Allegations

17. Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class ("Class") and subclass ("Subclass").

    a. Plaintiffs bring this action for injunctive relief, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of a Class defined as:

> All persons and business entities located in the United States, who, at any time beginning four years before the date this complaint was filed and ending on the date class certification is granted (the "Class Period"), purchased polished diamonds indirectly from the defendants. The Class does not include defendants, the officers, directors or employees of any defendant, any entity in which any defendant has a controlling interest, any affiliate of any defendant, any federal, state or local governmental entity, any judicial officer presiding over this action and the members of his/her immediate family, any judicial staff assigned to this matter, and any juror seated at any trial of this action.

    b. Plaintiffs bring this action for damages pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a Subclass defined as:

> All persons and business entities located in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota,

Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming, who at any time beginning four years before the date this Complaint was filed and ending on the date class certification is granted (the "Subclass Period"), purchased polished diamonds indirectly from the defendants. The Subclass does not include defendants, the officers, directors or employees of any defendant, any entity in which any defendant has a controlling interest, any affiliate of any defendant, any federal, state or local governmental entity, any judicial officer presiding over this action and the members of his/her immediate family, any judicial staff assigned to this matter, and any juror seated at any trial of this action.

18. Plaintiffs do not presently possess information identifying the exact size of the Class or Subclass. Based upon the nature of the trade and commerce involved, plaintiffs believe that the total number of Class and Subclass Members is sufficiently numerous so that joinder of all Class and Subclass Members is impracticable.

19. The claims of plaintiffs are typical of the claims of the Class and Subclass. Plaintiffs will fairly and adequately protect the interests of the Class and Subclass. Plaintiffs have no conflicts with any other Class or Subclass Member, and have retained competent counsel experienced in class action and antitrust litigation.

20. Common questions of law and fact exist, including:

    a. Whether defendants combined or conspired with others to fix, raise, stabilize and maintain the prices of polished diamonds;

    b. Whether defendants monopolized or combined or conspired with others to monopolize the supply of polished diamonds;

    c. Whether defendants' conduct caused the prices of polished diamonds to be maintained at levels higher than would exist in a competitive market;

    d. Whether plaintiffs and the Class are entitled to injunctive relief; and

   e. Whether defendants' conduct caused injury to the business or property of plaintiffs and the other Subclass Members and, if so, the appropriate class-wide measure of damages.

These and other questions of law and fact are common to the Class and the Subclass and predominate over any questions affecting only individual Class and Subclass Members.

  21. Class action treatment is a superior method for the fair and efficient adjudication of the controversy described herein. A class action provides an efficient method whereby enforcement of the rights of plaintiffs, the Class and Subclass Members, and defendants can be fairly managed. Plaintiffs know of no unusual problems of management and notice. If necessary or appropriate at a later time, the Class can be divided into further subclasses.

  22. The prosecution of separate actions by individual members of the Class and Subclass would create a risk of inconsistent or varying adjudication, establishing incompatible standards of conduct for defendants.

  23. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

<u>Trade and Commerce</u>

  24. The activities of the defendants and co-conspirators, as described herein, are within the flow of, are intended to, and do have a substantial effect on the foreign and interstate commerce of the United States.

  25. A diamond is carbon in a crystalline form. Diamonds are mined from the earth and, after cutting, polishing and other finishing, are valued based upon their beauty, color, cut,

clarity, and other characteristics. Diamonds are sold in their polished form to purchasers who incorporate the diamonds into jewelry and other products for resale.

26. Worldwide sale of diamond jewelry in 2003 exceeded $55 billion. More than half of those sales, approximately $28.7 billion, were in the United States.

27. Defendants are the source of most diamonds sold in the world. Defendants control about two-thirds of the world's supply of diamonds, particularly diamonds in larger sizes. The rest of the diamond industry is highly fragmented.

28. Defendants routinely acknowledge that their control over the diamond industry constitutes an illegal monopoly that violates United States antitrust laws. For example, in 1999, defendants' Chairman explained that the De Beers Group likes to think of itself as the world's best known and longest running monopoly. He declared publicly that, as a matter of policy, the De Beers Group violates the Sherman Act by managing the diamond market, controlling supply, managing prices and acting collusively with other firms in the diamond industry.

29. Defendants' control over the diamond industry began through agreements with other producers more than a century ago. In 1890, De Beers Consolidated signed a sales contract with the newly formed London Diamond Syndicate, which agreed to purchase the entire production from all its mines, thereby foreclosing the market to others. In 1930, this Syndicate became the Diamond Corporation which, in turn, formed the basis for the CSO that functioned as defendants' marketing arm until DTC was substituted for the same role in 2000.

30. Defendants obtain diamonds from mines they own and from the mines of other mining companies under contract to them. The diamonds are sorted by the CSO, and now the

7

DTC, outside of the United States. Defendants create a price book that values a diamond according to certain physical characteristics, according to its weight, shape, quality (i.e. the absence or presence of cracks and occlusions). Once the diamonds are sorted and graded, they are priced according to the price book.

31. Diamonds of various grades are placed into boxes for distribution at a "sight." Defendants control the distribution of diamonds by the use of "sightholders." A sightholder is an individual selected by and operating under defendants' direction who takes delivery, generally in London, of a box of rough diamonds at a "sight" during a "sight week" held ten times per year. The sightholder re-sells the diamonds, either as rough diamond, or after cutting, polishing and other finishing, for distribution through manufacturers, wholesalers and jewelers to consumers and other end users.

32. During the time period encompassed by the violations alleged herein, defendants and their co-conspirators sold and shipped substantial quantities of diamonds in a continuous and uninterrupted flow of foreign and interstate commerce to customers located in the United States.

### First Claim for Relief:
### Sherman Act § 1

33. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 32 as if fully set forth herein.

34. Beginning more than four years before this complaint was filed, the exact date being unknown to plaintiffs, and continuing thereafter up to and including the date this complaint was filed, defendants and their co-conspirators engaged in a contract, combination

8

and conspiracy in unreasonable restraint of the aforesaid foreign and interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The contract, combination and conspiracy is continuing, and will continue, unless enjoined.

35. The contract, combination and conspiracy consists of a continuing agreement, understanding and concert of action between and among the defendants and their co-conspirators, the substantial terms of which were and are (a) to collude on price and supply with others in the diamond industry, (b) to fix prices, (c) to control supply, and (d) to facilitate, effectuate and implement the contract, combination and conspiracy.

36. For the purpose of formulating and effectuating the aforesaid contract, combination and conspiracy, defendants and their co-conspirators did those things which they conspired to do, as alleged above, and:

    a. Enforced supply quotas under which polished diamonds were withheld from the market;

    b. Refused to deal with anyone in the sale of polished diamonds, except entities under their control;

    c. Restricted the supply and fixed the prices of polished diamonds; and

    d. Monitored and controlled the activities of producers, importers and manufacturers, sanctioning anyone who tried to mine, manufacture or distribute diamonds in violation of the rules established by defendants.

37. The contract, combination and conspiracy alleged herein had the following effects, among others:

    a. Prices charged for polished diamonds have been, and continue to be, fixed, raised, maintained and stabilized at artificially high and noncompetitive levels;

      b.      Purchasers of polished diamonds have been, and continue to be, deprived of the benefits of free and open competition; and

      c.      Competition between and among defendants and their co-conspirators in the sale of polished diamonds has been, and will continue to be, unreasonably restrained.

38.    Plaintiffs and the Class have been injured in their business and property by paying more for polished diamonds purchased indirectly from defendants than they otherwise would have paid in the absence of defendants' unlawful contract, combination and conspiracy.

39.    Plaintiffs and the Class are entitled to an injunction against defendants, preventing and restraining the continued unlawful contract, combination and conspiracy.

## Second Claim for Relief:
## Sherman Act § 2

40.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 39 as if fully set forth herein.

41.    Beginning more than four years before this complaint was filed, the exact date being unknown to plaintiffs, and continuing thereafter up to and including the date this complaint was filed, defendants and their co-conspirators monopolized and engaged in a contract, combination and conspiracy to monopolize the aforesaid foreign and interstate trade and commerce in the United States in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Defendants' monopoly and the contract, combination and conspiracy to monopolize are continuing and will continue unless enjoined.

42.    For the purpose of monopolizing and effectuating the aforesaid contract, combination and conspiracy to monopolize, defendants and their co-conspirators did those

things which they conspired to do, as alleged above, and, by agreement and predatory conduct, obtained and maintained control over two-thirds of the world's supply of diamonds.

43. The contract, combination and conspiracy alleged herein had, and continues to have, the following effects, among others:

    a. Prices charged for polished diamonds have been, and continue to be, fixed, raised, maintained and stabilized at artificially high and noncompetitive levels;

    b. Purchasers of polished diamonds have been, and continue to be, deprived of the benefits of free and open competition; and

    c. Competition between and among defendants and their co-conspirators in the sale of polished diamonds has been, and will continue to be, unreasonably restrained.

44. Plaintiffs and the Class have been injured in their business and property by paying more for polished diamonds and the products into which polished diamonds are incorporated than they otherwise would have paid in the absence of defendants' unlawful monopolization and contract, combination and conspiracy to monopolize.

45. Plaintiffs and the Class have no adequate remedy at law and are entitled to an injunction preventing and restraining continued monopolization and the unlawful contract, combination and conspiracy to monopolize.

### Third Claim for Relief: State Antitrust and Deceptive Acts or Practices

46. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 45 as if fully stated herein.

47. Defendants' contract, combination and conspiracy in unreasonable restraint of trade and to monopolize and defendants' monopolization constitute a violation of various state antitrust and/or consumer protection and deceptive and unfair business practices acts and laws, as follows:

   a. Alabama: Ala. Code § 6-5-60(a);

   b. Alaska: Alaska Stat. §§ 45.50.471 *et seq.*

   c. Arizona: Ariz. Rev. Stat. §§ 44-1401 *et seq.*, Ariz. Rev. Stat. §§ 44-1521 *et seq.* and the Constitution of the State of Arizona, Article 14, § 15;

   d. Arkansas: Ark. Code §§ 4-88-101 *et seq.*

   e. California: Cal. Bus. & Prof. Code §§ 16700 *et seq.*, and Cal. Bus. & Prof. Code §§ 17200 *et seq.*;

   f. Colorado: Col. Rev. Stat. §§ 6-1-105 *et seq.*

   g. Connecticut: Conn. Gen. Stat. §§ 42-110b *et seq.*

   h. Delaware: 6 Del. Code §§ 2511 *et seq.*

   i. District of Columbia: D.C. Code §§ 28-3901 and 28-4501 *et seq.*;

   j. Florida: Fla. Stat. Ann. §§ 542.15 *et seq.*, and Fla. Stat. Ann. §§ 501.201 *et seq.*;

   k. Georgia: Ga. Stat. §§ 10-1-391 *et seq.*;

   l. Hawaii: Haw. Rev. Stat. §§ 480-01 *et seq.*;

   m. Idaho: Idaho Code §§ 48-601 *et seq.*;

   n. Illinois: 815 Ill. Comp. Stat. §§ 505.1 *et seq.*;

   o. Indiana: Ind. Code §§ 24-1-1 *et seq.*, Ind. Code §§ 24-1-2 *et seq.*, and Ind. Code §§ 24-5-0.5-1 *et seq.*

   p. Iowa: Iowa Code §§ 553.1 *et seq.*;

q. <u>Kansas</u>: Kan. Stat. § 50-101 *et seq.*, and Kan. Stat. Ann. § 50-623 *et seq.*;

r. <u>Kentucky</u>: Ky. Rev. Stat. Ann. §§ 367.110 *et seq.*, and Ky. Rev. Stat. Ann. §§ 365.020 *et seq.*;

s. <u>Louisiana</u>: La. Rev. Stat. §§ 51:1401 *et seq.;*

t. <u>Maine</u>: Me. Rev. Stat. Title 10, §§ 1101 *et seq.*, and Me. Rev. Stat. Title 5, §§ 205-A *et seq.*;

u. <u>Massachusetts</u>: Mass. Gen. Laws Ch. 93A;

v. <u>Maryland</u>: Md. Com. Law §§ 13-101 *et seq.;*

w. <u>Michigan</u>: Mich. Comp. Laws § 445.771 *et seq.*, and Mich. Comp. Laws §§ 445.901 *et seq.*;

x. <u>Minnesota</u>: Minn. Stat. §§ 8.31 *et seq.*, Minn. State. §§ 325D.49 *et seq.* and Minn. Stat. §§ 325F.67 *et seq.*;

y. <u>Mississippi</u>: Miss. Code. Ann. §§ 75-21-1 *et seq.*;

z. <u>Missouri</u>: Mo. Ann. Stat. §§ 407.010 *et seq.;*

aa. <u>Montana</u>: Mont. Code §§ 30-14-101 *et seq.;*

bb. <u>Nebraska</u>: R.R.S. Neb. §§ 59-801 *et seq.*, and R.R.S. Neb. §§ 59-1601 *et seq.*;

cc. <u>Nevada</u>: Nev. Rev. Stat. § 598A.010 *et seq.*, and §§ 598.0903 *et seq.*;

dd. <u>New Hampshire</u>: N.H. Rev. Stat. §§ 358-A:1 *et seq.;*

ee. <u>New Jersey</u>: N.J. Stat. Ann. §§ 56:9-1 *et seq.* and §§ 56:8-1 *et seq.*;

ff. <u>New Mexico</u>: N.M. Stat. Ann. §§ 57-1-1 *et seq.* and §§ 57-12-1 *et seq.*;

gg. <u>New York</u>: N.Y. Gen. Bus. Law §§ 349 *et seq.*;

hh. <u>North Carolina</u>: N.C. Gen. Stat. §§ 75-1 *et seq.*;

ii. <u>North Dakota</u>: N.D. Cent. Code § 51-08.1-01 *et seq.* and §§ 51-15-01 *et seq.*;

jj. <u>Ohio</u>: Ohio Rev. Code Ann. §§ 1345.01 *et seq.*;

kk. <u>Oklahoma</u>: Okla. Stat. Tit. 15 §§ 751 *et seq.*;

ll. <u>Oregon</u>: Or. Rev. Stat. §§ 646.605 *et seq.*;

mm. <u>Pennsylvania</u>: 73 P.S. §§ 201-1 *et seq.*;

nn. <u>Rhode Island</u>: R.I. Gen. Laws §§ 6-13-1.1 *et seq.*;

oo. <u>South Carolina</u>: S.C. Code Ann. §§ 39-5-10 *et seq.*;

pp. <u>South Dakota</u>: S.D. Codified Laws §§ 37-1-3.1 *et seq.* and §§ 37-24-1. *et seq.*;

qq. <u>Tennessee</u>: Tenn. Code Ann. §§ 47-25-101 *et seq.* and §§ 47-18-101 *et seq.*;

rr. <u>Texas</u>: Tex. Bus. Comm. Code §§ 17.41 *et seq.*;

ss. <u>Utah</u>: Utah Code §§ 13-11-1 *et seq.*;

tt. <u>Vermont</u>: Vt. Stat. Tit. 9, §§ 2451 *et seq.*;

uu. <u>Virginia</u>: Va. Code §§ 59.1-196 *et seq.*;

vv. <u>Washington</u>: Wash. Rev. Code §§ 19.86.010 *et seq.*;

ww. <u>West Virginia</u>: W. Va. Code §§ 47-18-1 *et seq.* and §§ 46A-6-101 *et seq.*; and

xx. <u>Wisconsin</u>: Wis. Stat. §§ 133.01 *et seq.* and §§ 100.20 *et seq;*

yy. <u>Wyoming</u>: Wyo. Stat. §§ 40-12-101 *et. seq.*

48. The contract, combination and conspiracy alleged herein had the following effects, among others:

    a. Prices charged for polished diamonds have been, and continue to be, fixed, raised, maintained and stabilized at artificially high and noncompetitive levels;

    b. Prices charged for products into which polished diamonds are incorporated have been, and continue to be, higher as a result of defendant's anticompetitive and deceptive acts and practices;

    c. Purchasers of polished diamonds have been, and continue to be, deprived of the benefits of free and open competition; and

    d. Competition between and among defendants and their co-conspirators in the sale of polished diamonds has been, and will continue to be, unreasonably restrained.

49. Plaintiffs and Subclass Members have been injured in their business and property by paying more for polished diamonds and the products in which they are incorporated than they otherwise would have paid in the absence of defendants' unlawful conduct.

50. Plaintiffs and other Subclass Members are entitled to recover the damages they sustained, as permitted by the applicable state statute, for the injuries caused by defendants' violations of state statutes.

## Prayer for Relief

WHEREFORE, plaintiffs, the Class and Subclass demand judgment against defendants as follows:

A. That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certify the Class and Subclass represented by plaintiffs, designating their attorneys as Class and Subclass Counsel;

B. That the Court adjudge and decree that defendants, and each of them, engaged in an unlawful contract, combination and conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C. That the Court adjudge and decree that defendants, and each of them, unlawfully monopolized and engaged in an unlawful contract, combination and conspiracy to monopolize in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

D. That the Court adjudge and decree that each of the defendants, its subsidiaries, successors, transferees, assigns, and respective officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from directly or indirectly continuing, maintaining or renewing the contract, combination and conspiracy alleged herein, and from engaging in any other contract, combination and conspiracy, agreement, understanding or concert of action, adopting or following any practice, plan, program, or design having a similar purpose or effect in restraining competition;

E. That judgment be entered against defendants, jointly and severally, in favor of plaintiffs and the Subclass Members under state antitrust and/or consumer protection and deceptive and unfair business practices acts and laws for damages they sustained;

F. That plaintiffs recover the costs of suit, including reasonable attorneys' and experts' fees; and

16

G.  That the Court grant such other, further or different relief as may be just.

Dated: June 14, 2004  LAW OFFICES OF JOHN A. MAHER

*/s/ John A. Maher*

JOHN A. MAHER (JM-6121)
450 Springfield Avenue
Summit, New Jersey 07901-3626
(908) 277-2444

Josef D. Cooper
Tracy R. Kirkham
COOPER & KIRKHAM, PC
655 Montgomery Street, Suite 1700
San Francisco, California 94111
(415) 788-3030

Joseph J. Tabacco, Jr.
BERMAN, DeVALERIO, PEASE
 TABACCO, BURT & PUCILLO
425 California Avenue, Suite 2100
San Francisco, California 94104
(415) 433-3200

Craig Corbitt
ZELLE, HOFMANN, VOELBEL, MASON
 & GETTE, LLP
44 Montgomery Street, Suite 3400
San Francisco, California 94104
(415) 693-0770

Francis O. Scarpulla
THE LAW OFFICES OF FRANCIS O.
 SCARPULLA
44 Montgomery Street, Suite 3400
San Francisco, California 94104
(415) 788-7210

Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs demand trial by a jury of all issues triable as of right by a jury.

Dated: June 14, 2004                    LAW OFFICES OF JOHN A. MAHER

*[signature]*

JOHN A. MAHER (JM 6121)
450 Springfield Avenue
Summit, New Jersey  07901-3626
(908) 277-2444

Attorney for Plaintiffs