

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAWN SULLIVAN, ARRIGOTTI FINE JEWELRY and JAMES WALNUM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DB INVESTMENTS, INC., DE BEERS S.A., DE BEERS CONSOLIDATED MINES, LTD, DE BEERS A.G., DIAMOND TRADING COMPANY, CSO VALUATIONS A.G., CENTRAL SELLING ORGANIZATION, and DE BEERS CENTENARY A.G.,<br><br>Defendants. | Civil Action No. 04-2819 (SRC)<br><br>[PROPOSED] **FINAL JUDGMENT AND ORDER GRANTING FINAL APPROVAL TO THE CLASS ACTION SETTLEMENT WITH DEFENDANTS DB INVESTMENT, INC., DE BEERS S.A., DE BEERS CONSOLIDATED MINES, LTD., DE BEERS A.G., DIAMOND TRADING COMPANY, CSO VALUATIONS A.G., CENTRAL SELLING ORGANIZATION AND DE BEERS CENTENARY A.G.** |

This matter is before the Court on the motion for final approval of this class action settlement.

By "Order Conditionally Certifying Settlement Classes and Granting Preliminary Approval of Class Action Settlement," entered November 30, 2005, this Court: (a) granted preliminary approval of a proposed settlement reached on November 8, 2005, between the Defendants and Plaintiffs who had indirectly purchased diamonds and diamond products, (b) conditionally certified an Indirect Purchaser Settlement Class and Subclasses substantially similar to that defined below, (c) appointed Class Counsel for the respective Subclasses in the Indirect Purchaser Settlement Class, and (d) referred certain issues to a Special Master.

By "Stipulation and Order of Reference to the Honorable Alfred M. Wolin as Special Master," entered December 2, 2005, this Court confirmed the parties' choice of the Honorable Alfred M. Wolin as Special Master, and referred the following matters to him

pursuant to Federal Rules of Civil Procedure 23, 53(c) and 54(d)(2)(D): (a) the division of the aggregate Indirect Purchaser Settlement Fund between the subclasses, (b) the plan for dissemination of Notice and the forms of Notice, (c) the method and entitlement for class members to file claims to share in the distribution of the settlement proceeds, or alternative proposals for disbursement of the funds, and (d) the amount of attorneys fees, expenses and costs to be awarded to Plaintiffs' counsel and the amount of incentive awards, if any, to be awarded to Plaintiffs.

Subsequent to the foregoing orders regarding the indirect purchaser class, direct purchasers of rough and polished diamonds entered into a settlement in principle with Defendants, which provided for a modification to the terms of the settlement reached on November 8, 2005 by Defendants and Indirect Purchaser Plaintiffs. Accordingly, the parties to the November 8, 2005 settlement agreement and the direct purchaser Plaintiffs entered into an Amended Settlement Agreement on March 24, 2006. By "Order Modifying the Order Dated November 30, 2005 Granting Preliminary Approval of Class Action Settlement," entered March 31, 2006, this Court: (a) granted preliminary approval of the proposed amended settlement reached on March 24, 2006, between the Defendants and Plaintiffs who had directly and indirectly purchased diamonds and diamond products (hereinafter referred to as the "Amended Settlement Agreement"), (b) conditionally certified the Direct Purchaser Settlement Class and the Indirect Purchaser Settlement Class and Subclasses defined below, (c) appointed Class Counsel for the Direct Purchaser Class and reappointed Class Counsel for the respective Indirect Purchaser Subclasses, and (d) amended the Order of Reference to Judge Wolin to include for the Direct Purchaser Class, issues of dissemination of notice, plan of distribution and fee and incentive awards.

On September 6, 2007, Judge Wolin filed with this Court, the "Report and Recommendation of the Special Master" which contained detailed findings of fact, conclusions of law and recommendations for: (a) forms of Notice for publication and mailing to members of the Direct Purchaser Class, (b) forms of Notice for publication to members of the Indirect Purchaser Class, (c) plans for the publication, website posting and, where applicable, mailing of the forms of Notice, (d) division of the Indirect Purchaser Settlement funds 50.3% to the Reseller Subclass and 49.7% to the Consumer Subclass, and (e) plans and formulae for the distribution of the settlement funds to claimants from the Classes.

On October 1, 2007, this Court approved the forms of Notice recommended by the Special Master and directed that notice of the proposed settlement be disseminated to members of the Indirect Purchaser and Direct Purchaser Settlement Classes in the manner recommended by the Special Master and specified in the October 1, 2007 Order.

In compliance with that Order, as modified, Notice was disseminated to the members of the Settlement Classes beginning with the activation of a dedicated website on December 20, 2007, and the publication of Notice in National Geographic Magazine on December 28, 2007.

After submission of applications by Class Counsel for an award of attorneys' fees, reimbursement of costs and incentive awards to certain of the named Plaintiffs in the settled actions, on February 15, 2008, Judge Wolin filed with this Court the "Report and Recommendation of the Special Master on Incentive Awards, Cost Reimbursement and Attorneys' Fee Awards." A separate judgment will be entered on the fee, cost and incentive award applications.

On April 14, 2008, this Court held a publicly noticed hearing on whether the terms and conditions of the Amended Settlement Agreement reached on March 24, 2006

between Plaintiffs and De Beers S.A. (the "Parties") are fair, reasonable and adequate for the settlement of all claims released by Plaintiffs against the Defendants in these actions. The opportunity to be heard was given to all persons so requesting. This Court has reviewed and considered all of the materials filed in connection therewith, all of the presentations and evidence submitted in support of and in objection to the Amended Settlement Agreement.

The proposed settlement having been duly noticed, and having been fully considered by this Court, is hereby fully and finally approved pursuant to Rule 23, Federal Rules of Civil Procedure. In accordance with the Amended Settlement Agreement, it is hereby **ADJUDGED, ORDERED AND DECREED** that:

1.  As used herein, any defined words or terms shall have the same meaning as defined in the Amended Settlement Agreement.

2.  This Court has jurisdiction over the claims of the members of the Settlement Classes asserted in this proceeding, personal jurisdiction over the settling Parties (including all members of the Settlement Class) and subject matter jurisdiction to approve the settlement as set forth in the Amended Settlement Agreement previously filed with this Court.

3.  Class certification is an appropriate method for protecting the interests of the members of the Settlement Classes and resolving the common issues of fact and law arising out of the existence of the alleged violations of federal and state law.

4.  Rule 23(b)(2), Federal Rules of Civil Procedure, provides for certification of classes seeking injunctive relief, and Rule 23(b)(3), Federal Rules of Civil Procedure, provides for class certification of classes seeking monetary relief when there is an ascertainable class and a well defined community of interest among class members.

5.  On March 31, 2006, this Court preliminarily approved certification of a Indirect Purchaser Settlement Class consisting of:

4

All natural persons and legal entities located in the United States who purchased any Diamond Product from January 1, 1994 to March 31, 2006, provided that any purchases of any Gem Diamond made directly from a Defendant (including any entity in which any Defendant has a controlling interest and any affiliate of any Defendant) or Defendants' Competitors (including any entity controlled by or affiliated with any such party) shall be excluded. The class shall also exclude Defendants, the officers, directors or employees of any Defendant, any entity in which any Defendant has a controlling interest, any affiliate of any Defendant, any federal, state or local governmental entity, and any judicial officer presiding over this Settlement, and any member of the judicial officer's family and court staff.

6.      The Indirect Purchaser Settlement Class consists of two subclasses defined as:

    i.    All persons and entities in the Indirect Purchaser Settlement Class who purchased any Diamond Product for resale (the "Indirect Purchaser Reseller Subclass"); and

    ii.   All persons and entities in the Indirect Purchaser Settlement Class who purchased any Diamond Product for use and not for resale (the "Indirect Purchaser Consumer Subclass").

7.      On March 31, 2006, this Court also preliminarily approved certification of a Direct Purchaser Settlement Class consisting of:

All natural persons and legal entities located in the United States who purchased any Gem Diamond directly from a Defendant or Defendants' Competitors (including any entity controlled by or affiliated with any such party) from September 20, 1997 to March 31, 2006. The class shall exclude Defendants, the officers, directors or employees of any Defendant, any entity in which any Defendant has a controlling interest, any affiliate of any Defendant, Defendants' Competitors, any person or entity which is or was a Sightholder for the time period(s) during which such person or entity had Sightholder status, any federal, state or local governmental entity, and any judicial officer presiding

over this Settlement, and any member of the judicial officer's family and court staff.

8.     Based upon the findings of fact and conclusions of law set forth in this Court's decision and order regarding settlement class certification and final approval of the settlement, pursuant to Rule 23(e), Federal Rules of Civil Procedure, this Court finds that the applicable requirements of Rule 23, Federal Rules of Civil Procedure, have been satisfied with respect to both of the Settlement Classes and makes final for settlement purposes only its certification of the Direct Purchaser Settlement Class and the Indirect Purchaser Settlement Class.

9.     The notice given to the members of each Settlement Class was reasonably calculated under the circumstances to apprise them of the pendency of these actions, all material elements of the proposed settlement, and their opportunity to exclude themselves from, object to, or comment on the settlement, and to appear at the final approval hearing.  The notice was reasonable and the best notice practicable under the circumstances; was due, adequate and sufficient notice to all members of each Settlement Class; and complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.  A full opportunity has been afforded to the members of each Settlement Class to participate in this hearing, and all members of the Direct Purchaser Settlement Class and the Indirect Purchaser Settlement Class and other persons wishing to be heard have been heard. Accordingly, the Court determines that all members of the Direct Purchaser Settlement Class and the Indirect Purchaser Settlement Class who have not excluded themselves from this litigation are bound by this Final Judgment and Order.

10.     Five (5) individuals or entities that claim to be members of the Direct Purchaser Class timely requested to be excluded from this settlement, and a list of such

individuals and entities is attached hereto as Exhibit 1.  One hundred and thirty-five (135) individuals or entities that claim to be members of the Indirect Purchaser Class timely requested to be excluded from this settlement.  Sixty-six (66) of those requests came from individuals or entities that claim to be members of the Indirect Purchaser Reseller Subclass and a list of such individuals and entities is attached hereto as Exhibit 2.  Sixty-nine (69) of those requests came from individuals or entities that claim to be members of the Indirect Purchaser Consumer Subclass and a list of such individuals and entities is attached hereto as Exhibit 3.  All of these individuals and entities are hereby found to have properly excluded themselves from their respective Settlement Classes and this Final Judgment and Order shall not be binding on them.

11.    This Court hereby grants final approval to the settlement and finds that it is fair, reasonable and adequate, and in the best interests of the Settlement Classes.  The proposed settlement is the product of arm's-length, serious and informed negotiations between experienced and knowledgeable counsel.

12.    This Court having conducted a *de novo* review hereby adopts and affirms the September 6, 2007 "Report and Recommendation of the Special Master" and orders the division of the Indirect Purchaser Settlement funds 50.3% to the Reseller Subclass and 49.7% to the Consumer Subclass.  The Court also adopts as the plan of distribution of the settlement proceeds to members of each of the respective Settlement Classes, the procedures and formulae for said distributions set out in the Special Master's September 6, 2007 Report and Recommendation.

13.    The Amended Settlement Agreement is expressly incorporated herein by this reference, and has the full force and effect of an order of this Court. The Parties are directed to implement and consummate the Amended Settlement Agreement according to its terms and conditions.

14. The Order and Stipulated Injunction, attached hereto as Exhibit 4 and incorporated herein, is hereby approved and shall be filed with the clerk forthwith.

15. In addition to the effect of any final judgment entered in accordance with this Amended Settlement Agreement, upon this Settlement becoming final, the Defendants and their past, present and future directors, officers, employees, shareholders, affiliates (related by a shareholding interest directly or indirectly of 25% or more, and listed in Appendix D to the Amended Settlement Agreement), divisions, predecessors, parents (including Central Holdings Limited, Anglo American plc, Debswana Diamond Company (Proprietary) Limited, and their subsidiaries), subsidiaries, other organizational units of any kind, general or limited partners, successors and assigns, and the past, present and future agents, representatives, attorneys, heirs, executors, administrators and other persons acting on behalf of any of them, shall be released and forever discharged from the claims released as provided in Section V.A of the Amended Settlement Agreement. The release is attached to this Order as Exhibit 5.

16. As provided in Section V.B of the Amended Settlement Agreement, upon the Effective Date of this Settlement, each member of the Settlement Classes who has not elected to be excluded from this litigation covenants and agrees that he, she or it shall not thereafter seek to establish liability or assert claims, on behalf of itself or any other person, entity or class, against any of the Released Parties, in whole or in part, for any claims, causes of action, demands, rights, requests for equitable, legal and administrative relief arising from the conduct described in Section V.A of the Amended Settlement Agreement and the release attached hereto as Exhibit 5. The Parties agree that this covenant may be pled as a full and complete defense to any action, suit or other proceeding that may be instituted, prosecuted or attempted with respect to any of the claims described in Exhibit 5, except as necessary to enforce the injunctive relief provided by the Amended Settlement Agreement.

8

17.     To the extent permitted by law, Plaintiffs and each member of the Settlement Classes who has not elected to be excluded from this litigation shall be deemed to have expressly waived, released, and forever discharged any and all defenses, provisions, rights and benefits that may be available under the provisions of Section 1542 of the California Code of Civil Procedure, or under any law of any state or the District of Columbia, the Commonwealth of Puerto Rico or U.S. Virgin Islands, or any principle of common law which is similar, comparable or equivalent to Section 1542 of the California Civil Code. California Civil Code, Section 1542, provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Each member of the Settlement Classes is deemed to have assumed all risks for claims heretofore and hereafter arising, whether known or unknown, suspected or unsuspected, contingent or noncontingent with respect to the subject matter of the claims being released above, whether or not concealed or hidden, and without regard to the subsequent discovery or existence of different or additional facts.

18.     As to each Defendant, this and any other action against the Defendants that is pending in this Court containing the same or similar allegations to those alleged in this action, and brought on behalf of the members of the Settlement Classes are dismissed with prejudice and, except as provided herein or in the Amended Settlement Agreement, without costs.

19.     Without affecting the finality of this Final Judgment and Order, the Parties to the Amended Settlement Agreement and the members of the Settlement Class, have submitted to the exclusive and continuing jurisdiction of this Court for the purpose of enforcing the terms

of the Amended Settlement Agreement, and this Court reserves exclusive and continuing jurisdiction over the Amended Settlement Agreement, including the administration and consummation of the Settlement.

20.     Nothing in this Final Judgment and Order, the Settlement or the Amended Settlement Agreement shall be construed as or deemed to be evidence or an admission or concession by any of the Released Parties of a violation of any statute or law or of any liability or wrongdoing by the Released Parties or of the truth or validity of any of the claims or allegations asserted in this action or related actions.

21.     If this Court's final approval of the Amended Settlement Agreement is reversed or overturned on appeal, then: (a) this Final Judgment and Order shall have no force or effect, and all negotiations, proceedings, and statements made in connection with the Amended Settlement Agreement shall be without prejudice to the right of any persons or entities; (b) the Parties expressly reserve all of their rights and preserve all applicable defenses; (c) this and any related actions shall revert to their respective procedural and substantive status prior to the date of execution hereof and shall proceed as if the Amended Settlement Agreement, and all other related orders and papers, had not been executed; and (d) in order to ensure that no Party is prejudiced by the passage of time, any motions filed in this and any related actions after the Amended Settlement Agreement is rendered null and void shall be deemed filed on the date of execution of the Amended Settlement Agreement.

22.     Under Rule 54, Federal Rules of Civil Procedure, the Court, in the interests of justice, there being no just reason for delay, expressly directs the Clerk of the Court to enter this Final Judgment and Order, and hereby decrees that upon entry, it be deemed as a final judgment and appealable with respect to all claims by members of the Settlement Classes against the Defendants, in accordance with the terms of the Amended Settlement Agreement.

23.   This Court directs the Clerk of the Court to maintain for a period of five (5) years, the record of those individuals and entities claiming to be members of the Settlement Classes who have timely excluded themselves, and to provide a certified copy of such records to De Beers S.A., at its expense.

Dated:   May 2 2, 2008

_____
The Honorable Stanley R. Chesler
United States District Judge

# EXHIBIT 1

Direct Purchaser Class Opt-Outs

| CLAIM | NAME 1 | NAME 2 | ADDRESS 1 | ADDRESS 2 | CITY | ST | ZIP |
|---|---|---|---|---|---|---|---|
| 28 | H & H DIAMOND CO | | | | | | |
| 134 | JOHN-ROBERT HASSON | | | | | | |
| 135 | BRUCE SMITH LTD | | | | | | |
| 146 | GAY JEWELER, INC. | | | | | | |
| 147 | K E BUTLER & CO. JEWELERS | | | | | | |

**EXHIBIT 2**

Reseller Subclass Opt-Outs

| CLAIM | NAME 1 | NAME 2 | ADDRESS 1 | ADDRESS 2 | CITY | ST ZIP |
|---|---|---|---|---|---|---|
| 267816 | J & J JEWELRY & GIFTS | | | | | |
| 179439 | LINN & OWEN JEWELERS | | | | | |
| 603128 | LUX BOND & GREEN | | | | | |
| 609826 | WHD CO. | | | | | |
| 603498 | BRUCE SMITH LTD | | | | | |
| 91015 | DALE'S JEWELRY | | | | | |
| 610022 | JOHN-ROBERT HASSON | #53512-004 | | | | |
| 610134 | BRIAN CULWELL | | | | | |
| 610135 | RONNIE MCKAY | JERI SMITH SECY/TREAS | | | | |
| 610136 | SPRINGBROOK INDUSTRIES | C/O WILLIAM HALPERT | | | | |
| 610137 | MCKAY ENTERPRISES | RHONDA DI GIACOMO MGR | | | | |
| 124744 | GAY JEWELER, INC. | | | | | |
| 604896 | K E BUTLER & CO JEWELERS | W EARL BUTLER VP/OWNR | | | | |
| 610138 | MYRTHIA LARRAURI | | | | | |
| 610139 | ASHLEY BROWN | | | | | |
| 610140 | BLANCA TORRADO | | | | | |
| 610141 | JERRY REVIS | | | | | |
| 610142 | JODI TURNER | | | | | |
| 610143 | VIVIAN BLAKEY | | | | | |
| 610144 | JAMES MCDONOUGH | | | | | |
| 610145 | MARIELI QUETGLAS | | | | | |
| 610146 | JOAN BROWN | | | | | |
| 610147 | SHAWN MITCHELL | | | | | |
| 610148 | BRENT TAYLOR | | | | | |
| 610149 | ANGEL FIGUEROA | | | | | |
| 610150 | CINDY SPIVEY | | | | | |
| 610151 | JUAN FERRER | | | | | |
| 610152 | MISTY LAMBERT | | | | | |
| 610153 | ELIZABETH ORTIZ | | | | | |
| 610154 | STEPHANIE THORNTON | | | | | |
| 610155 | SANDRA LOBOS | | | | | |
| 610156 | GOLD N SCENTS | | | | | |
| 610157 | D W SHELNUTT | | | | | |
| 610158 | BARTON JENKINS | | | | | |
| 610159 | BRIDGET STRENGTH | | | | | |
| 610160 | TEVA ALLEN | | | | | |
| 610161 | JAMES E JOHNSTON | | | | | |
| 610162 | CATHY DAVIS | | | | | |
| 610163 | RAQUEL BONILLA | | | | | |
| 610164 | ANNETTE CANCEL | | | | | |
| 610165 | DAVIDA BOYKIN | | | | | |
| 610166 | DIANE SHELNUTT | | | | | |
| 610167 | AGUSTIN MEIZOSO | | | | | |
| 610168 | CHERYL REED | | | | | |
| 610169 | ERIC QUETGLAS | | | | | |

Reseller Subclass Opt-Outs

JAKE ARIANS

610170 BILL CAYPLESS
610171 BELINDA HINES
610172 MIGUEL VELZQUEZ
610173 BEN SCANDLEN
610174 JERRY RILEY
610175 JANET DAVIS
610176 JOAN LOPEZ
610177 CHRIS DAVIS
610178 LAMAR DAVIS
610179 JEFF DAVIS
610180 JOSE QUETGLAS
610181 DAN W TALIAFERRO
602661 ICE LLC
610182 REGINA RUSSELL
610183 ANGELIA HUNTLEY
610184 ANNA MEANY
610185 BEN S TALIFERRO
610186 JENENNE BOYD
610187 LULA ALLEN
610188 MELVIN HUNTLEY
610189 MICHAEL REED

**EXHIBIT 3**

Consumer Subclass Opt-Outs

| CLAIM | NAME 1 | NAME 2 | ADDRESS 1 | ADDRESS 2 | CITY | ST ZIP |
|---|---|---|---|---|---|---|
| 1355 | ANDREW A NICELY | | | | | |
| 5199454 | NATHAN E BENDER | | | | | |
| 524920701 | ETTSON L MCCOY | | | | | |
| 52729803 | MONICA RA CHAN | | | | | |
| 51840198 | ADAM T DASILVA | | | | | |
| 5023 | DIANO BIVENS DC#121025 C1-1064 | | | | | |
| 18579 | ROBERT KUTLER | | | | | |
| 5270 | CAROL BATISTE | | | | | |
| 36319 | WILLIAM HALPERT | | | | | |
| 42473 | JOHN-ROBERT HASSON | #53512-004 | | | | |
| 42474 | STEWART B POWELL | | | | | |
| 42475 | BRUCE S SMITH | | | | | |
| 42477 | JERI SMITH | | | | | |
| 51347 | DAVID ANTHONY SMITH | | | | | |
| 51346 | WM EARL BUTLER | | | | | |
| 51349 | WM EARL BUTLER | | | | | |
| 52338 | MYRTHA LARRAURI | | | | | |
| 52339 | ASHLEY BROWN | | | | | |
| 52340 | BLANCA TORRADO | | | | | |
| 52542 | JERRY REVIS | | | | | |
| 52543 | JODI TURNER | | | | | |
| 52638 | VIVIAN BLAKEY | | | | | |
| 52789 | JAMES MCDONOUGH | | | | | |
| 52882 | MARELI QUETGLAS | | | | | |
| 52883 | JOAN BROWN | | | | | |
| 52884 | SHAWN MITCHELL | | | | | |
| 52885 | BRENT TAYLOR | | | | | |
| 52886 | ANGEL FIGUEROA | | | | | |
| 52887 | CINDY SPIVEY | | | | | |
| 52888 | JUAN FERRER | C/O K E BUTLER AND CO. JEWELERS | | | | |
| 52889 | NESTY LAMBERT | C/O GAY JEWELER, INC. | | | | |
| 52990 | ELIZABETH ORTIZ | | | | | |
| 52991 | STEPHANIE THORNTON | | | | | |
| 52992 | SANDRA LOBOS | | | | | |
| 52994 | GOLD N 3CENTS | | | | | |
| 52995 | D W SHELNUTT | | | | | |
| 52996 | BARTON JENKINS | | | | | |
| 52997 | BRIDGET STRENGTH | | | | | |
| 52998 | TEVA ALLEN | | | | | |
| 52999 | JAMES E JOHNSTON | | | | | |
| 53000 | CATHY DAVIS | | | | | |
| 53001 | RAQUEL BONILLA | | | | | |
| 53002 | ANNETTE CANCEL | | | | | |
| 53003 | DAVIDA BOYKIN | | | | | |
| 53004 | DIANE SHELNUTT | | | | | |
| 53005 | AUGUSTIN MEZO790 | | | | | |
| 53006 | SHERYL REED | | | | | |
| 53008 | ERIC QUETGLAS | | | | | |
| 53009 | BILL CAYPLESS | | | | | |
| 53010 | BELINDA HINES | | | | | |
| 53011 | MIGUEL VELZQUEZ | | | | | |
| 53012 | BEN SCANDLEN | | | | | |

Consumer Subclass Opt-Outs

| | |
|---|---|
| 53013 | JERRY RILEY |
| 53014 | JANET DAVIS |
| 53015 | JOAN LOPEZ |
| 53016 | CHRIS DAVIS |
| 53017 | LAMAR DAVIS |
| 53019 | JEFF DAVIS |
| 53020 | JOSE OMETGLAS |
| 53021 | DAN W TALIAFERRO |
| 53022 | ICE, LLC |
| 53023 | REGINA RUSSELL |
| 56974 | ANGELIA HUNTLEY |
| 56975 | ANNA MEANY |
| 56976 | BEN S TALIFERRO |
| 57003 | JENENNE BOYD |
| 57005 | LILA ALLEN |
| 57006 | MELVIN HUNTLEY |
| 57007 | MICHAEL REED |

**EXHIBIT 4**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHAWN SULLIVAN, ARRIGOTTI FINE JEWELRY and JAMES WALNUM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DB INVESTMENTS, INC., DE BEERS S.A., DE BEERS CONSOLIDATED MINES, LTD., DE BEERS A.G., DIAMOND TRADING COMPANY, CSO VALUATIONS A.G., CENTRAL SELLING ORGANIZATION, and DE BEERS CENTENARY A.G.,<br><br>Defendants. | Civil Action Index No. 04-2819 (SRC)<br><br><br>**ORDER AND STIPULATED INJUNCTION** |

WHEREAS, several class actions have been filed in various Federal and State Courts against DB Investments, Inc., De Beers S.A., De Beers Consolidated Mines, Ltd., De Beers A.G., Diamond Trading Company, Ltd., CSO Valuations A.G., Central Selling Organization, Central Holdings Ltd. and De Beers Centenary A.G. (collectively "Defendants");

WHEREAS, Plaintiffs have made certain claims against the Defendants based upon alleged violations of federal and state antitrust, unfair competition, and/or consumer protection and fraud laws and/or the common law of several states;

WHEREAS, the Defendants deny any liability with respect to each and every one of Plaintiffs' allegations of unlawful conduct, damages, and other injuries, and there has been no determination by the Court that a violation of law occurred;

1

WHEREAS, the European Commission, which has authority to review and regulate Defendants' business, oversees the conduct of Defendants' business and has conducted lengthy investigations into Defendants' principal business practices;

WHEREAS, the Plaintiffs and Defendants desire to resolve their dispute without adjudication of any issue of law or fact; and

WHEREAS, this Order and Stipulated Injunction shall not be deemed or construed to be an admission by or evidence against the Defendants with respect to any issue of law or fact;

NOW, THEREFORE, it is hereby stipulated and agreed, by and between the named plaintiffs and the class they represent (collectively, the "Plaintiffs") and De Beers that:

## I. GENERAL TERMS AND CONDITIONS

(A)    This Order and Stipulated Injunction is for settlement purposes only, and does not and shall not constitute an admission by the Defendants that they have engaged in any of the activities prohibited or described below, or that any laws have been violated as alleged by the Plaintiffs in their Complaints filed on: (i) April 13, 2001, in the United States District Court for the Southern District of New York entitled *Leider, et al., v. Ralfe, et al.*, Docket No. 01-CV-3137 (HB); or (ii) September 20, 2001, in the United States District Court for the District of New Jersey entitled *Anco Industrial Diamond Corp. v. DB Investments, Inc., et al.*, D.N.J. Index No. 01-cv-04463 (SRC); or (iii) June 14, 2004, in the United States District Court for the District of New Jersey entitled *Sullivan, et al. v. DB Investments, Inc., et al.*, Docket No. 04-02819 (SRC); or (iv) July 12, 2004, in the Superior Court for the State of California, City and County of San

Francisco, entitled *Hopkins v. De Beers Centenary A.G., et al.*, Docket No. CGC-04-432954; or (v) August 25, 2004, in the United States District Court for the District of New Jersey entitled *British Diamond Import Company v. Central Holdings Ltd., et al.*, D.N.J. Index No. 04-cv-04098 (SRC); or (vi) February 17, 2005, in the Madison County Circuit Court, Illinois, entitled *Null v. DB Investments, Inc., et al.*, Docket No. 05-L-209; or (v) February 17, 2005 in Maricopa County, Arizona, entitled *Cornwell v. DB Investments, Inc., et al.*, Docket No. 2005-002968.

(B)     This Order and Stipulated Injunction, along with each of its terms and conditions, shall be entered by order of the United States District Court for the District of New Jersey (the "United States District Court"), and shall not become effective unless and until the settlement of the above-captioned action becomes final in accordance with all applicable provisions of the Settlement Agreement between the parties thereto dated March 17, 2006, and is no longer appealable.  The date upon which such settlement becomes final shall be deemed the effective date of this Order and Stipulated Injunction (the "Effective Date").

(C)     For purposes of entering and enforcing this Order and Stipulated Injunction, the United States District Court has jurisdiction over the subject matter of this Order and Stipulated Injunction and over the parties hereto pursuant to Sections 1 and 2 of the Sherman Act and Section 4 and 16 of the Clayton Act (15 U.S.C. §§ 1, 2, 15 and 26).

## II. DEFINITIONS

For purposes of this Order and Stipulated Injunction, the following definitions shall apply:

3

(A)   **"ALROSA"** means ALROSA Company Limited and its directors, officers, employees, agents and representatives, predecessors, successors and assigns.

(B)   **"BHP Billiton"** means individually and as a combined group the companies of BHP Billiton Ltd. and BHP Billiton Plc. including their directors, officers, employees, agents and representatives, predecessors, successors and assigns.

(C)   **"DTC Best Practice Principles"** refers to the Diamond Trading Company Ltd.'s Best Practice Principles as set forth in Exhibit 1 to this Order and Stipulated Injunction.

(D)   **"De Beers"** means De Beers S.A. and its past, present and future directors, officers, employees, shareholders, general or limited partners, affiliates (related by a shareholding interest directly or indirectly of 25% or more), divisions, parents, subsidiaries, other organizational units of any kind, including the Defendants identified below, engaged in the mining, processing, treatment, sorting, distribution, marketing, advertising, sale and pricing of Rough Diamonds, their predecessors, successors and assigns, and the past, present and future agents, representatives, attorneys, heirs, executors, administrators and other persons acting on their behalf.

(E)   **"Defendants"** means DB Investments, Inc., De Beers S.A., De Beers Consolidated Mines, Ltd., De Beers A.G., Diamond Trading Company, Ltd. ("DTC"), CSO Valuations A.G., Central Selling Organization, Central Holdings Ltd. and De Beers Centenary A.G.

(F)   **"Diamond Jewelry"** means any decorative or functional adornment typically made of metals and set with one or more Gem Diamond.

4

(G)    "**Gem Diamond**" means a diamond of such color, clarity and quality that it has been or could be used in Diamond Jewelry.

(H)    "**Joint Venture**" means any project, enterprise or business directly or indirectly related to or involved in the exploration or prospecting for, or mining, processing, treatment, sorting or distribution of Rough Diamonds in which De Beers: (i) has a significant interest, or (ii) otherwise significantly participated in funding, developing, establishing, operating or maintaining.

(I)    "**Polished Diamond**" means a Gem Diamond that has been cut and polished.

(J)    "**Rio Tinto**" means individually and as a combined group the companies of Rio Tinto Ltd. and Rio Tinto Plc. including their directors, officers, employees, agents and representatives, predecessors, successors and assigns.

(K)    "**Rough Diamond**" means a Gem Diamond in its uncut and unpolished state.

(L)    "**Sight**" means any one of customarily ten (10) sales annually of Rough Diamonds by the DTC to Sightholders.

(M)    "**Sightholder**" means a customer (including any directors, officers, employees, controlled affiliates, divisions or subsidiaries) entitled to purchase Rough Diamonds from the DTC at a regularly scheduled Sight or Sights. Any such customer is a Sightholder only for those periods of time when it was or is entitled to purchase Rough Diamonds from the DTC at a regularly scheduled Sight or Sights. Sightholder status terminates when the right to purchase Rough Diamonds from the DTC at a Sight or Sights terminates.

(N)    "**Third Party Producers**" means any non-government-controlled entity engaged in the mining or production of Rough Diamonds in which De Beers does not hold directly or indirectly a fifty percent (50%) or greater ownership interest.

(O)    "**United States**" means the fifty states of the United States of America, the District of Columbia, the Commonwealth of Puerto Rico and the U.S. Virgin Islands.

### III. COMPLIANCE WITH ANTITRUST LAWS

De Beers shall comply with and abide by the antitrust laws of the United States (Title 15, United States Code, Section 1, *et seq.*), as well as with the antitrust laws of each of the several states and territories within the United States.

### IV. PROHIBITED CONDUCT

(A)    De Beers shall not enter into any agreement, arrangement or undertaking with any Third Party Producer to:

(i)    Be the exclusive purchaser or distributor of the Third Party Producer's Rough Diamonds; or with respect to ALROSA, BHP Billiton or Rio Tinto only, purchase or distribute more than 40 percent (40%) of the total United States dollar value of the annual Rough Diamond production from any of those entities, and, for the duration of the injunction, De Beers shall file an annual sworn statement with the Court by April 1 of the subsequent year, and provide copies to Counsel for the Settlement Classes, certifying compliance with this provision during the prior calendar year;

(ii)     Set or fix the price of Rough Diamonds sold by the Third Party Producer other than those purchased by De Beers from any such Third Party Producer;

(iii)    Determine the quality or quantity of the Third Party Producer's Rough Diamond production or sales; or

(iv)     Require diamond traders, polishers, dealers, manufacturers, cutters, retailers or other persons or entities in the United States to resell or to purchase Rough Diamonds: (a) at a fixed price; (b) in a specific geographic region; or (c) from a specific person or entity.

PROVIDED, HOWEVER, that nothing in this paragraph shall preclude De Beers from:

(i)      Conducting business with ALROSA pursuant to the terms of the agreement between De Beers and ALROSA and related undertakings reviewed by the European Commission pursuant to Article 9 of Council Regulation (EC) No 1/2003 as of the date of final approval of the Settlement Agreement between the parties dated March 24, 2006, and any non-material subsequent amendment or agreement between De Beers and ALROSA;

(ii)     Entering into agreements, arrangements or undertakings which receive clearance or approval from an antitrust or competition regulator with authority to review such

7

agreement, arrangement or undertaking, including the United States Department of Justice, the European Commission and/or the competition enforcement agencies of the member states of the European Union, and the competition enforcement agencies of Australia, Canada, Russia and South Africa; and provided further that De Beers' compliance in good faith with an order or law of a foreign sovereign government shall not constitute the basis of a finding of contempt of this Order and Stipulated Injunction;

(iii)    Entering into agreements, arrangements or undertakings with a Joint Venture for the purchase and/or sale of Rough Diamonds; and

(iv)    Participating in trade association activities or engaging in other activities designed to promote ethical practices or other best practice principles in the diamond or jewelry industries.

(B)    De Beers shall not enter into any agreement, arrangement or undertaking with any Sightholder to:

(i)    Set or fix the resale price of Gem Diamonds;

(ii)    Restrict the entities from whom a Sightholder or other person or entity may purchase Gem Diamonds;

(iii)  Restrict the persons or entities to whom a Sightholder or other person or entity may sell Gem Diamonds; or

(iv)  Restrict the geographic region or area in which a Sightholder may sell Gem Diamonds.

*PROVIDED, HOWEVER*, that nothing in this paragraph shall preclude De Beers from selecting Sightholders under a process approved by the European Commission from time to time, including but not limited to evaluation of Sightholders based on the following criteria: (i) financial standing and reliability; (ii) market position in relation to particular diamonds or other market segments; (iii) distribution efficiency, experience and ability; (iv) marketing activities and skills; (v) quality of manufacturing ability; (vi) general business reputation; (vii) compliance with the DTC Best Practice Principles; and (viii) misrepresentation of simulants as natural diamonds.

(C)  De Beers shall not purchase Rough Diamonds in the United States for the principal purpose of restraining supply.

## V. DISTRIBUTION OF ORDER

De Beers shall, within thirty (30) days of the Effective Date, distribute a copy of this Order and Stipulated Injunction to the Board of Directors and management of each of the Defendants, and will certify in writing to the United States District Court that it has done so. In addition, De Beers shall distribute a copy of this Order and Stipulated Injunction in the future to any new members of the Board of Directors and/or management of each of the Defendants to whom the Order and Stipulated Injunction was not previously distributed, until such time as this Order and Stipulated Injunction terminates.

9

## VI. DURATION

This Order and Stipulated Injunction shall terminate five (5) years from the Effective Date of this order.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the parties hereto have caused this Order and Stipulated Injunction to be executed by their officers or representatives hereunto duly authorized, effective as of the Effective Date.

IT IS SO STIPULATED BY:

Defendants:

Date: _____

           By: _____

                De Beers S.A.

Plaintiffs:

Date: _____

           By: _____

                Berman DeValerio Pease Tabacco Burt & Pucillo

Date: _____

           By: _____

                Law Offices of John Maher

Date: _____

           By: _____

                Glancy Binkow & Goldberg, LLP

Date: _____

           By: _____

                Law Offices of Francis O. Scarpulla

Date: _____

           By: _____

                Cooper & Kirkham, P.C.

11

Date: _____

      By:   _____

            Zelle Hofmann Voelbel Mason & Gette, LLP

Date: _____

      By:   _____

            Lieff, Cabraser, Heimann & Bernstein, LLP

Date: _____

      By:   _____

            Korein Tillery

Date: _____

      By:   _____

            Lovell Stewart Halebian LLP

Date: _____

      By:   _____

            Stamell & Schager, LLP

Date: _____

      By:   _____

            Meredith Cohen Greenfogel & Skirnick, P.C.

Date: _____

      By:   _____

            Sommer Barnard Attorneys, P.C.

## **ORDER**

It is so ordered this _____ day of _____, 200[ ].


_____
The Hon. Stanley R. Chesler
United States District Judge
District of New Jersey

**EXHIBIT 5**

## RELEASED CLAIMS

(A)    <u>Releases</u>.  Upon the Effective Date, the Released Parties shall be released and forever discharged from any and all claims, causes of action, demands, rights, actions, suits and requests for equitable, legal and administrative relief of any kind or nature whatsoever arising from or relating to facts alleged in any of the Class Actions (whether such claims are based on antitrust, unfair competition, consumer protection or fraud or deception, unfair practices, price discrimination, trade regulation, trade practices, unjust enrichment and/or other federal or state law, regulation or common law similar or analogous to any of the above, including without limitation the injunctive provisions of the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.*), whether known or unknown, asserted or unasserted, that any member of the Settlement Classes who has not timely excluded himself, herself or itself from the action, ever had, could have had, now has, or can, shall or may have in the future (the "Claims"), on the basis of or arising from conduct from the beginning of time until March 31, 2006, by any of the Released Parties concerning the exploration, mining, processing, treatment, sorting, distribution, marketing, advertising, sale or pricing of any Diamond Product, including but not limited to: (i) existing or past agreements, contracts or transactions with other diamond mining companies, suppliers, producers, sellers or distributors, including but not limited to agreements with ALROSA, Alexkor, Argyle, Ashton Mining, BHP Billiton, Debswana, Namdeb, Rio Tinto and any Joint Ventures; (ii) existing or past acquisitions of interests in, joint ventures relating to, or other participation in diamond mines, diamond mining companies, suppliers, producers, sellers or distributors or other businesses engaged in the marketing, advertising, sale or pricing of any Diamond Product; (iii) methods of distribution or distribution programs of any Diamond Product (including but not limited to the Supplier of Choice program), including all means of selling or

distributing any Diamond Product to any direct or indirect purchasers; (iv) marketing and sales programs relating to any Diamond Product; and (v) advertising programs relating to any Diamond Product.   The parties expressly agree that the release applies to Claims arising from certain business practices or conduct in existence on March 31, 2006, but continuing after such date, namely: (i) the Supplier of Choice Program, so long as there is no material change in the European Commission's approval, no material change in the Supplier of Choice Program or no material change to the United States federal antitrust laws that are applicable to the Supplier of Choice Program; (ii) the ALROSA Agreement, so long as there is no material change in the European Commission's position, no material change in the ALROSA Agreement or no material change to the United States federal antitrust laws that are applicable to the ALROSA Agreement; and (iii) any advertising programs substantially similar to those used during the two years prior to March 31, 2006.  Nothing in this Settlement shall be interpreted to release unrelated claims, including, but not limited to, for example, a personal injury, product defect or breach of contract claim.  Nothing in this Settlement is intended to release any direct purchaser claim of any Sightholder.