UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

_____

SHAWN SULLIVAN, et al., on behalf of
themselves and all others similarly situated,

                       Plaintiffs,

                       -against-

DB INVESTMENTS, INC., et al.,

                       Defendants.
_____

Civil Action Index No.

04-02819 (SRC)

***Electronically Filed***

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER APPROVING DISTRIBUTION OF SETTLEMENT FUNDS TO THE INDIRECT PURCHASER RESELLER SUBCLASS AND REIMBURSEMENT OF ADDITIONAL EXPENSES INCURRED BY CLASS COUNSEL**

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................................................ 1

DISCUSSION .................................................................................................................................. 3

I. The Proposed Distribution Order Is The Best Way To Make Immediate Payments To Authorized Reseller Claimants. ........................................................................................ 3

    A. The Court Should Approve The Administrative Recommendations Of The Claims Administrator Concerning Acceptance Or Rejection Of Claims. .............. 3

    B. The Court Should Approve Payment Of Late Claims. ........................................... 4

    C. The Court Should Authorize Distribution Of The Reseller Subclass Net Settlement Fund To Authorized Reseller Claimants. ............................................. 7

        1. Plaintiffs Request Authorization For Rust To Carry Out The Initial Distribution Of Checks To Authorized Reseller Claimants Via A Two-Step Distribution. ................................................................................ 7

        2. Claims That Fell Below The Minimum Check Amount Will Not Be Paid. .......................................................................................................... 8

    D. The Court Should Authorize Payment Of Rust's Outstanding Claims Administration Expenses And Reserve Of Estimated Expenses. ......................... 8

    E. The Court Should Authorize Plaintiffs To Reserve Funds To Pay For Tax-Related Expenses. ................................................................................................... 8

II. Class Counsel's Request For Reimbursement Of Expenses Incurred During The Past Four Years Of Appeals Is Fair And Reasonable Under The Circumstances ...................... 9

CONCLUSION ............................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**Cases**

*In re Am. Tower Corp. Secs. Litig.*, 648 F. Supp. 2d 223 (D. Mass. 2009) .................................. 6

*In re Cendant Corp., Deriv. Action Litig.*, 232 F. Supp. 2d 327 (D.N.J. 2002) ........................... 12

*In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389 (D.N.J. 2006) .......................... 13

*In re Elec. Carbon Prods. Antitrust Litig.*, 622 F. Supp. 2d 144 (D.N.J. 2007) ............................ 5

*In re Orthopedic Bone Screw Prods. Liability Litig.*, 246 F.3d 315 (3d Cir. 2001) ................. 5, 6

*Oh v. AT&T Corp.*, 225 F.R.D. 142 (D.N.J. 2004) ...................................................................... 13

*Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431 (D.N.J. 2009) ..................................................... 6

Plaintiffs submit this memorandum of law in support of Plaintiffs' motion for an order (1) approving distribution of settlement funds to the Indirect Purchaser Reseller Subclass ("Reseller Subclass" or "Resellers") and (2) authorizing reimbursement of additional expenses incurred by Class Counsel over the past four years of appeals to the Third Circuit Court of Appeals and then to the United States Supreme Court. Plaintiffs' current motion relates only to distribution to the Reseller Subclass. Separate motions will be subsequently filed concerning distribution to the Direct Purchaser Class and the Indirect Purchaser Consumer Class.[1]

## PRELIMINARY STATEMENT

Plaintiffs achieved an historic settlement with Defendant De Beers S.A. and certain of its affiliates (together, "De Beers"), which established a $295 million settlement fund to compensate class members for their injuries caused by De Beers's alleged monopoly of the worldwide supply of gem diamonds, provided for a stipulated injunction restraining De Beers from engaging in specified anticompetitive conduct, and subjected De Beers for the first time in history to the jurisdiction of a federal court in the United States to enforce the terms of the settlement and to obtain relief in the event of any future anticompetitive conduct. On May 22, 2008, after holding a fairness hearing on the settlement and considering objections, and with the aid of the extensive report and recommendation of the Special Master, the Honorable Alfred M. Wolin, this Court granted final approval to the settlement.

The settlement funds, which had been placed in escrow by De Beers until the Court's order became final, would have been ready for distribution to class member claimants not long after the Court's May 2008 order had a handful of appeals not intervened. Those appeals, which

---

[1] The claims administration process is currently ongoing for the Direct Purchasers and Consumers.

1

are described in greater detail in section II below, dragged on for four years. First, a three-judge panel of the Third Circuit Court of Appeals vacated this Court's May 22, 2008 final judgment with a remand on terms that made it unlikely that the settlement would ever be approved as structured. Next, the Third Circuit granted Plaintiffs' petition for rehearing *en banc*. The *en banc* court ordered further extensive briefing, followed by oral argument in February 2011. In December 2011, in a 7-to-2 decision, the appellate court affirmed this Court's May 2008 judgment in its entirety. Finally, two sets of objectors sought review of the Third Circuit's *en banc* decision by the U.S. Supreme Court. One petition for *certiori* was denied and the other objector never filed her petition before the extended deadline for doing so passed. On May 21, 2012 (almost four years to the day), the last application to the Supreme Court was denied, all appeals had been exhausted, and the settlement and this Court's May 22, 2008 order became final.

During the past four years, while the appeals were underway, members of the Reseller Subclass who filed claims waited patiently for payment. This has been a difficult economic environment for Resellers. Their businesses suffered as a result of the recession that began in 2008 and many of them continue to suffer today. Some unfortunately have gone out of business. All Reseller Subclass claimants have looked forward to the day when the appeals would end and they could begin receiving payment on their claims from the settlement fund. That day has finally arrived. Counsel for the Resellers wish to begin distribution to Reseller claimants immediately under the terms of the accompanying [Proposed] Order Approving Distribution of the Indirect Purchaser Reseller Subclass Net Settlement Fund ("Distribution Order"), which are described in detail below in Section I.

In addition, because the extent and duration of the appeals was not fully anticipated at the time this Court gave final approval of the settlement in May 2008, Class Counsel seek approval for reimbursement of additional expenses they incurred during the past four years of appeals, as described in detail below in Section II.

## DISCUSSION

**I. The Proposed Distribution Order Is The Best Way To Make Immediate Payments To Authorized Reseller Claimants.**

**A. The Court Should Approve The Administrative Recommendations Of The Claims Administrator Concerning Acceptance Or Rejection Of Claims.**

During the approval process and appellate proceedings, the Court-appointed claims administrator, Rust Consulting, Inc. ("Rust"), diligently collected and processed claims. Rust received 7,862 claims from potential Reseller Subclass members. As described below and in the accompanying Declaration of Daniel Coggeshall, a Senior Project Administrator at Rust ("Coggeshall Declaration"), following Rust's comprehensive claims administration, deficiency processing, and auditing procedures, Rust recommends, and Class Counsel agree, that 6,190 claims should be accepted as valid and 1,672 claims should be rejected as ineligible for payment.

As described more fully in the Coggeshall Declaration, Rust collected and processed the 7,862 claims it received from Reseller Subclass members. Coggeshall Decl. ¶ 7. Rust entered the claimants' information into a database and assigned each claim a unique claim number. *Id.*

Upon careful review of the claims, Rust discovered that a number of claims were deficient in some respect. Such deficiencies included claims that, *inter alia*: (i) contained incomplete transactions; (ii) were not completed on the correct claim form; (iii) provided more than two years of purchase information; (iv) only provided one year of purchase information; or (v) were missing signatures. *Id.* ¶ 11. Rust provided written notice to claimants of deficiencies

3

and afforded claimants a reasonable opportunity to cure their deficient claims. *Id.* ¶ 12. Upon receiving necessary information to cure a claim, Rust re-categorized the claim as valid. *Id.*

Some claims, however, remained uncured or were inherently ineligible. *See id.* ¶¶ 13, 25. Rust sent these claimants letters notifying them that their claims were ineligible. *Id.* ¶ 13.

As part of its claims administration procedures, Rust also performed a random audit of claims to prevent fraud and ensure quality control. Rust notified certain claimants that their claims had been selected for additional review, and Rust requested that these claimants provide documentation supporting their claims. *Id.* ¶¶ 15-16. Of the 91 audited claimants, 30 failed to respond.

Finally, Rust received 183 letters from claimants seeking to withdraw their claims. *Id.* ¶ 17.

In total, despite Rust's reasonable efforts, there were 1,672 claims that were deficient and uncured, inherently ineligible, audited but unsupported by documentation, or withdrawn. Id. ¶ 25. A summary of these claims is provided as Exhibit E to the Coggeshall Declaration. Plaintiffs respectfully request that the Court approve Rust's recommendation to treat these claims as ineligible for payment.

      **B.**    **The Court Should Approve Payment Of Late Claims.**

Of the 7,862 Reseller claims filed, the Claims Administrator received 343 claims that were filed after the May 19, 2008 filing deadline but which, except for their tardiness, are valid in all other respects. *Id.* ¶ 23. The late claims represent approximately $2.7 billion in Recognized Claim Amounts compared to the approximately $60.8 billion in Recognized Claim Amounts attributable to timely claims. *See id.* ¶¶ 22-23. Due to the modest number of late claims, Plaintiffs respectfully recommend that the Court approve treating the late claims as valid and timely and permit the late claimants to share in the settlement recovery.

4

In the Third Circuit, whether late claims may share in the settlement proceeds depends on whether the late claimants can show excusable neglect. *See In re Elec. Carbon Prods. Antitrust Litig.*, 622 F. Supp. 2d 144, 152-53 (D.N.J. 2007) (citing *In re Orthopedic Bone Screw Prods. Liability Litig.*, 246 F.3d 315, 323 (3d Cir. 2001)). To determine whether there was excusable neglect, the Court must examine "(1) the danger of prejudice to the other class members or to the defendants, (2) the length of delay and its effect on judicial proceedings, (3) the reason for the delay, including whether it was withing [sic] the reasonable control of the late claimant, and (4) whether the late claimant acted in good faith." *Elec. Carbon Prods.* 622 F. Supp. 2d at 153. Here, each of these factors weighs in favor of permitting late claimants to share in the settlement. *First*, paying the late claims would not prejudice the claimants who filed timely claims because "[a]ll legitimate members of the class are normally presumed equally entitled to share in recovery." *Id.* at 154. Indeed, "courts have generally said the mere reduction of money available to timely registrants is not considered prejudice for purposes of this inquiry." *Id.* Even if the effect on the recoveries of the timely claims is significant, this does not mean the timely claimants are prejudiced by inclusion of late claims. In *Electrical Carbon Products*, the court permitted late claimants to share in the settlement proceeds even though doing so reduced the recovery of another claimant by 16.6%, or over $1.6 million. *Id.* at 155.[2] Here, the late claims comprise only 4.3% of the total Recognized Claim Amounts for all valid claims, so the effect on other recoveries will not be significant. *See* Coggeshall Decl. ¶¶ 22-23.

*Second*, the vast majority of late claims—329 out of the 343 claims, representing Recognized Claim Amounts of approximately $2.0 billion—were filed prior to November 2008

---

[2] *See also id.* at 156 ("[T]he Court has an obligation not to elevate the claims of any class member over the claims of other class members, no matter how large a class member's stake in the case might be.").

5

(Coggeshall Decl. ¶ 23), shortly after the May 2008 deadline passed, which represents a very short delay. Further, processing the late claims, even the few filed after November 2008, did not delay or effect any of the judicial proceedings.

*Third*, of the late claimants who provided a reason for their tardiness, they indicated that they did not see the published notice in time to file a claim by the deadline. Coggeshall Decl. ¶ 23. This should not prevent Resellers who filed late claims from sharing in the settlement.

*Finally*, there is no indication that the late claimants acted in anything other than good faith. Thus, it is equitable to permit these claimants to share in this historic settlement. Indeed, district courts within the Third Circuit have permitted payment of late claims in similar circumstances. *See, e.g., Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431 (D.N.J. 2009) (approving payment of late claims); *see also Orthopedic Bone Screw*, 246 F.3d at 323 (finding that the district court abused its discretion in excluding a late claimant from sharing in the settlement recovery). Further, late claims are routinely included in settlement distributions in other district courts around the country as well. *See, e.g., In re Am. Tower Corp. Secs. Litig.*, 648 F. Supp. 2d 223, 225 (D. Mass. 2009) (approving payment of late claims).

To facilitate the efficient distribution of the Reseller Subclass Net Settlement Fund, however, there must be a final cut-off date after which no other claims may be accepted. Thus, Plaintiffs respectfully request that no claim submitted after February 28, 2012 be accepted for any reason. Rust has not received any claims after this proposed cut-off date. Coggeshall Decl. ¶ 23.

Upon treating the late claims as valid, there are a total of 6,190 claimants that will receive payments ("Authorized Reseller Claimants"). Coggeshall Decl. ¶ 22.

      **C.**      **The Court Should Authorize Distribution Of The Reseller Subclass Net Settlement Fund To Authorized Reseller Claimants.**

            **1.**      **Plaintiffs Request Authorization For Rust To Carry Out The Initial Distribution Of Checks To Authorized Reseller Claimants Via A Two-Step Distribution.**

Plaintiffs submit that the administration of the settlement has complied with the terms of the Settlement Agreement and the Orders of this Court. Accordingly, Plaintiffs respectfully request that Rust be authorized to send out checks to the Authorized Reseller Claimants.

Since the claims administration process for the Direct Purchaser Class and Consumer Subclass is still ongoing, however, Plaintiffs propose a two-step distribution. The claims administrator has recently advised counsel for the Reseller Subclass that a few of the claims submitted as Direct Purchaser claims may, upon further investigation, have to be reclassified as claims made by Reseller Subclass members. Coggeshall Decl. ¶ 28. Plaintiffs do not wish to delay distribution to the Authorized Reseller Claimants while these claims are being investigated, but deem it prudent to reserve a sufficient amount in the Reseller Subclass Settlement Fund to potentially cover these additional claims. Thus, Plaintiffs propose that: (i) Authorized Reseller Claimants receive 85% of their payment now during this initial distribution and the remaining amount they are entitled to during a second distribution; **but** (ii) all Authorized Reseller Claimants whose second distribution under this two-step approach would be less than $25 will instead receive 100% of their payments during the initial distribution. *Id.* ¶ 29.

To ensure that the second distribution comes as soon as practicable after the first distribution, Plaintiffs propose giving Authorized Reseller Claimants 90 days within which to cash their initial distribution checks. At the 45-day mark, Rust will contact those who have not cashed their checks by telephone or email to encourage them to do so. *Id.* ¶ 30.

Under this proposed two-step distribution, Authorized Reseller Claimants will benefit by receiving most—and for some, all—of their payments now, without delay.

### 2. Claims That Fell Below The Minimum Check Amount Will Not Be Paid.

The Notice informed Resellers that payments falling under a minimum $25.00 check amount will not be paid. *See* Notice at 10. There are 135 claimants whose calculated payment falls below the minimum check amount. Coggeshall Decl. ¶ 24. Consistent with the Notice and the Court-approved Plan of Allocation, these claims will not be paid.

### D. The Court Should Authorize Payment Of Rust's Outstanding Claims Administration Expenses And Reserve Of Estimated Expenses.

Rust has provided Class Counsel with an invoice detailing the fees and expenses it has incurred to date to administer the claims of the Reseller Subclass. *See* Coggeshall Decl. ¶ 31, Ex. F. Class Counsel have reviewed the invoice and believe the fees and expenses are reasonable. Plaintiffs respectfully request that the Court authorize payment to Rust of $3,604.06 from the Direct Purchaser Settlement Fund and $30,044.11 from the Indirect Purchaser Settlement Fund (of which $10,209.99 is attributable to Reseller claims administration expenses).

Further, Rust has estimated the fees and expenses it will incur to carry out the initial and second distribution to the Authorized Reseller Claimants. Coggeshall Decl. ¶ 32. Based on this estimate, Plaintiffs respectfully request authorization to reserve $92,515 to cover these future claims administration expenses.

### E. The Court Should Authorize Plaintiffs To Reserve Funds To Pay For Tax-Related Expenses.

Plaintiffs have been informed that it will cost $5,938.04 to prepare necessary tax filings for the Reseller Subclass Settlement Fund. *See* Declaration of Joseph J. Tabacco, Jr., July 16,

2012, concurrently filed in support of Plaintiffs' current Motion, ("Tabacco Declaration") at ¶ 9. Plaintiffs respectfully request authorization to reserve this amount.

## II. Class Counsel's Request For Reimbursement Of Expenses Incurred During The Past Four Years Of Appeals Is Fair And Reasonable Under The Circumstances

Class Counsel knew that appeals from this Court's May 2008 order were likely to be filed by the same objectors—represented by counsel who have appeared on behalf of objectors in other class action settlement proceedings—who had appeared and objected to the settlement during the fairness hearing. However, Class Counsel anticipated that these objectors' arguments would be rejected for the same reasons they had been rejected by this Court, and that the May 2008 order would be affirmed and cash distributions made to class members in relatively short order. No one anticipated that the appeals would take four years, require so many resources, and would seriously jeopardize the entire settlement.

On July 13, 2010, after extensive briefing, motion practice, and oral argument,[3] a panel of the Third Circuit Court of Appeals vacated this Court's final settlement order and remanded the matter with instructions that made it unlikely that the settlement would ever be approved in its original approved form. Tabacco Decl. ¶ 3. If left to stand, the panel's decision would have undermined the historic settlement and jeopardized the ability of class members to recover their damages. Class Counsel therefore went to great lengths and devoted considerable resources to obtain relief from the *en banc* court.

---

[3] Following entry of the Court's final approval order, twenty-eight class members appealed the order, initiating nine proceedings before the Third Circuit. The objector-appellants filed their opening briefs on February 25, 2009. On June 11, 2009, Plaintiffs filed an omnibus response that, due to the breadth of the issues raised by the objectors, was over 100 pages in length. Accompanying Plaintiffs' brief was a separate motion to dismiss certain issues raised on appeal by objectors who did not file timely claims, based on mootness grounds. Objectors filed their reply briefs in July 2009. On January 28, 2010, the Third Circuit panel heard oral argument. *See* Tabacco Decl. ¶ 2.

Following the panel's decision, Plaintiffs promptly filed their petition for rehearing by the Third Circuit *en banc*. *Id.* Plaintiffs also retained as an expert Samuel Issacharoff, a professor of law at New York University. *Id.* ¶ 4. Professor Issacharoff is a widely recognized expert on class action law and civil procedure and an experienced and able appellate advocate with a long and successful track record before the Third Circuit. *Id.* In obtaining Professor Issacharoff's expert services, Plaintiffs obtained invaluable insights into the issues on appeal and the questions posed by the appellate court, and had the advantage of his experience and knowledge of the court. Professor Issacharoff entered his appearance on behalf of the Plaintiffs and was assigned primary responsibility for oral argument before the *en banc* court. *Id.* ¶ 5.

*Amici curiae,* including trade groups, entered appearances and filed briefs in support of Plaintiffs' rehearing petition. *Id.* ¶ 3. On August 27, 2010, the Third Circuit vacated the panel's decision and set the matter for rehearing *en banc* in February 2011. *Id.* Thus began the second round of substantial appellate briefing.

On November 10, 2010, the Third Circuit ordered the parties to submit supplemental briefing to address nine difficult questions. *Id.* ¶ 4. The questions raised by the Third Circuit were extraordinarily complex. *Id.* Professor Issacharoff played a crucial role in assisting Class Counsel in briefing each of the questions asked by the *en banc* court. *Id.*

Plaintiffs filed their lengthy supplemental brief on January 11, 2011, carefully addressing each of the appellate court's questions as well as responding to objectors' arguments. *Id.* A number of *amici* filed supplemental briefs as well. *Id.*

On February 23, 2011, Professor Issacharoff orally argued the matter on behalf of Plaintiffs before the Third Circuit sitting *en banc*. *Id.* ¶ 5. After oral argument, the parties filed several supplemental submissions regarding pertinent legal authorities decided after the date of

10

oral argument. *Id.* On December 20, 2011, the Third Circuit issued its much-awaited *en banc* opinion, which affirmed this Court's final approval order in all respects. *Id.*

Some objectors sought review of the *en banc* decision by the United States Supreme Court, but were ultimately unsuccessful. *Id.* ¶ 6. After four years of extensive appellate practice, the appellate journey ended and the settlement in this matter became final on May 21, 2012, when the Supreme Court denied the final petition for review. *Id.*

Class Counsel have devoted an enormous amount of attorney hours to the appeals over the past four years for which Class Counsel are not seeking a further award of attorneys' fees. However, Class Counsel are seeking reimbursement for the out-of-pocket expenses incurred in connection with the appeals and efforts to save the hard-won settlement from reversal on appeal. These expenses incurred by Class Counsel are itemized in the schedules attached as Exhibits 2 to 11 to the Tabacco Declaration and total $515,377.00. *See* Tabacco Decl. ¶¶ 7-8, Exs. 2-11. Class Counsel seek reimbursement for $403,994.93 of this amount, which accounts for reimbursement of outstanding expenses already approved by the Court. *Id.* ¶ 8.

Prior proceedings in 2008 have some bearing on the present request. As the Court may recall, Class Counsel had originally sought as part of its attorneys' fee request 25% of the interest earned on the settlement fund since its creation in 2006 until the Court's May 2008 approval, which was about $28 million as of early January 2008. The Special Master did not recommend either granting or denying the request, but recommended that the Court preserve that issue for later in the event the interest was not exhausted by the initial payment of the claims. *See* Report and Recommendation of Special Master [Alfred M. Wolin] on Incentive Fee, Cost Reimbursement and Attorneys' Fee Award at 13-15, Feb. 15, 2008 (Docket Item 180). The Court, however, rejected that recommendation and denied Plaintiffs' request for an award of any

of the interest earned on the settlement fund prior to final approval. *See* Opinion, May 22, 2008, at 51-52 (Docket Item 304).[4]

The Court did not rule out the possibility of a later request for compensation in the event of substantial appellate practice. The ensuing appellate practice was more complex and protracted than anyone expected. Significantly, Class Counsel are not requesting a supplemental fee award, but is limiting this request for only the reimbursement of expenses.

In common fund cases, class counsel is "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp., Deriv. Action Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002). Throughout the past four years of appellate practice, Class Counsel's expenses reflect costs that were reasonably incurred in expert fees, court filings, travel costs, court reporters and transcripts, postal and delivery charges, computerized research, telephone and facsimile charges, photocopying and reproduction charges, appellate brief printing services, and the like. Of these expenses, the single biggest item is Professor Issacharoff's fees for his services, which total

---

[4] During oral argument on the attorneys' fee petition during the April 14, 2008 fairness hearing, the following exchange took place between the Court and William Bernstein, one of the counsel for the Plaintiffs, on the issue of accrued interest:

> THE COURT: Let me see if I understand correctly. Have you totally dropped any claim to accrued interest?
>
> MR. BERNSTEIN: Well, we dropped a footnote on our brief that we are dropping that claim today but we don't know what the future holds. If we have a very substantial amount of appellate work, we think under the Court's continuing jurisdiction that perhaps we could come back and ask your Honor for additional compensation….
>
> THE COURT: I think you could take as a given that there's a good likelihood that you'll have a substantial amount of appellate work here.

*See* Hr'g Tr. at 104:23-105:10.

$141,634.69.[5]  Class Counsel strongly believe that this expense in particular was reasonable, necessary, and greatly benefited class members.  Courts in this Circuit have found these types of expenses to be reasonable and compensable.  *See, e.g., In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 411-12 (D.N.J. 2006); *Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004).

Because the expenses are adequately documented and were appropriately incurred, and the amounts incurred are reasonable given the efforts involved, Plaintiffs respectfully request that their request for reimbursement of expenses be granted in the amount of $403,994.93.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Distribution Order.

Dated: July 16, 2012                                  Respectfully submitted,

By: /s/ John A. Maher

John A. Maher
LAW OFFICES OF JOHN A. MAHER
450 Springfield Avenue
Summit, New Jersey 07901-3626
Telephone: (908) 277-2444

*On Behalf of All Class Counsel*

---

[5] Tabacco Decl. ¶ 8.  Attached to the Tabacco Declaration are the declarations of counsel from each of the firms joining in the request for reimbursement of additional expenses.  These declarations, which summarize the expenses by category, attest that the expenses were reasonably and necessarily incurred and were derived from the books and records regularly maintained by each law firm.

13

Joseph J. Tabacco, Jr.
BERMAN DeVALERIO
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200

Susan G. Kupfer
GLANCY BINKOW & GOLDBERG LLP
One Embarcadero Center, Suite 760
San Francisco, CA 94111
Telephone: (415) 972-8160

*Counsel for the Indirect Purchaser Reseller Subclass*

William Bernstein
Eric B. Fastiff
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

Josef D. Cooper
Tracy R. Kirkham
COOPER & KIRKHAM, P.C.
357 Tehama Street, 2nd Floor
San Francisco, CA 94103-4169
Telephone: (415) 788-3030
Craig C. Corbitt
ZELLE HOFMANN VOELBEL MASON
& GETTE, LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700

Stephen Katz
Howard B. Becker
KOREIN TILLERY
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844

*Counsel for the Indirect Purchaser Consumer Subclass*

14

Christopher Lovell
LOVELL STEWART HALEBIAN LLP
61 Broadway
Suite 501
New York, NY 10006
Telephone: (212) 608-1900

*Counsel for the Leider Plaintiffs*

Jared B. Stamell
STAMELL & SCHAGER, LLP
One Liberty Plaza, 35th Floor
New York, New York 10006
Telephone: (212) 566-4047

Robert A. Skirnick
Maria A. Skirnick
MEREDITH COHEN GREENFOGEL
& SKIRNICK, P.C.
19 Rockwood Road West
Manhasset, NY 11030
Telephone: (917) 599-7200

Edward W. Harris III
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square
Suite 3500
Indianapolis, IN 46204
Telephone: (317) 713-3500

*Counsel for the Direct Purchaser Plaintiffs*