John A. Maher
Law Offices of John A. Maher
450 Springfield Avenue
Summit, New Jersey 07901-3626
(908) 277-2444

*On Behalf of All Class Counsel*

Jared B. Stamell, Esq.
Stamell & Schager, LLP
1 Liberty Plaza, 23rd Floor
New York, New York 10006
(212) 566-4047

*Counsel for Direct Purchaser Class Counsel*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------------x
                                                                        :
SHAWN SULLIVAN, et al., on behalf of                                    :
themselves and all others similarly situated,                           :
                                                                        :
                              Plaintiffs,                       :
                                                                        :
           -against-                                                :   Civil Action Index No.
                                                                        :   04-02819 (SRC)
DB INVESTMENTS, INC., et al.,                                           :
                                                                        :   *Electronically Filed*
                              Defendants.                       :
                                                                        :
------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR AN ORDER APPROVING DISTRIBUTION OF SETTLEMENT FUNDS
TO THE DIRECT PURCHASER CLASS**

Plaintiffs submit this memorandum in support of Plaintiffs' motion for an order approving distribution of settlement funds to the Direct Purchaser Class.

## PRELIMINARY STATEMENT

The settlement with Defendant De Beers S.A. and certain of its affiliates (collectively "De Beers") established a $295 million settlement fund to compensate class members for injuries caused by De Beers' alleged monopoly of the worldwide supply of gem diamonds, provided for a stipulated injunction restraining De Beers from engaging in specific anticompetitive conduct and subjected De Beers to the jurisdiction of a federal court in the United States to enforce the terms of the settlement.   Part of the settlement fund, $22.5 million, was allocated to pay claims by the Direct Purchaser Class.

On May 22, 2008, after holding a fairness hearing on the settlement and considering objections, and with the aid of the extensive report and recommendation of the Special Master, the Honorable Alfred M. Wolin granted final approval to the settlement.   The settlement fund was placed in escrow until the Court's order became final, but could not be distributed until appeals were resolved in late 2011.

## DISCUSSION

**I.    The Proposed Distribution Order Makes Payments To Direct Purchasers Whose Claims Have Been Approved.**

There are three claims remaining with questions about whether they qualify for a distribution.   The proposed distribution reserves 20 % to allow those claims to be paid, as well as to reserve for taxes and other expenses which may be incurred before the Direct Purchaser Fund is wound up.   For the three unresolved claims, if not approved, the monies would be released and reallocated to class members with approved claims.

1

A. **The Court Should Approve the Administrative Recommendations of the Claims Administrator Concerning Acceptance or Rejection of Claims And Set Aside Reserve Amounts For Claims That Are Not Yet Resolved.**

The court-appointed claims administrator, Rust Consulting, Inc. ("Rust"), processed claims after the settlement was final. As described in the Declaration of Daniel Coggeshall, a Senior Project Administrator at Rust ("Coggeshall Declaration"), following Rust's claims administration, deficiency processing and auditing procedures, Rust recommends, and Class Counsel agree, that 166 claims should be accepted as valid and 1,122 should be rejected as ineligible for payment. Coggeshall Decl. ¶¶ 23, 25. There are open questions about three claims. If these questions cannot be resolved, the claimants will have the opportunity to move the Court to determine whether they qualify for a distribution.

Questions about all but three claims were solved by Rust's review of the claims. Rust found that some claims were deficient. Deficiencies included claims that, *inter alia,* (i) contained incomplete transactions, (ii) were not completed on the correct claim form and (iii) were for purchases that did not qualify as direct purchases. *Id.* ¶ 12. Rust provided written notice to claimants of deficiencies and afforded claimants the opportunity to cure deficiencies. *Id.* ¶ 13. Upon receiving information to cure deficiencies, Rust re-categorized claims. *Id.* Some claimants withdraw their claims in response to requests for information. *Id.* ¶ 20.

A total of 1,122 claims were deficient, uncured, and inherently ineligible or audited but unsupported by documentation, or withdrawn. *Id.* ¶ 25. Plaintiffs respectfully request that the Court approve Rust's recommendation to treat these claims as ineligible for payment.

B. **The Court Should Approve Payment of Late Claims.**

Of the 1,287 claims filed, the Claims Administrator received 32 claims that were filed after the May 19, 2008 filing deadline, but except for their tardiness, are valid in all other respects. *Id.*

2

¶¶ 10, 24.  The late claims represent approximately $163,014,730 in adjusted purchases compared to the approximately $866,327,667 in adjusted purchases attributable to timely claims.  *Id.*  ¶¶ 23-24.  Due to the low number of late claims, Plaintiffs recommend that the Court approve treating the late claims as valid and timely and permit the late claims to share in the settlement recovery.

In the Third Circuit, late claims may share in the settlement proceeds if the late claimants can show excusable neglect.  *See In re Elec. Carbon Prods. Antitrust Litig.,* 622 F.Supp.2d 144, 152-53 (D.N.J. 2007) (citing *In re Orthopedic Bone Screw Prods. Liability Litig.,* 246 F.3d 315, 323 (3d Cir. 2001)).  To determine whether there was excusable neglect, the Court must examine "(1) the danger of prejudice to the other class members or to the defendants, (2) the length of delay and its effect on judicial proceedings, (3) the reason for the delay, including whether it was withing [sic] the reasonable control of the late claimant, and (4) whether the late claimant acted in good faith."  *Elec. Carbon Prods.,* 622 F.Supp.2d at 153.  Here, each of these factors weighs in favor of permitting late claimants to share in the settlement.

Paying the late claims would not prejudice the claimants who filed timely claims because "[a]ll legitimate members of the class are normally presumed equally entitled to share in recovery."  *Id.* at 154.  Indeed, "courts have generally said the mere reduction of money available to timely registrants is not considered prejudice for purposes of this inquiry."  *Id.*  Even if the effect on the recoveries of the timely claims is significant, this does not mean the timely claimants are prejudiced by inclusion of late claims.  In *Electrical Carbon Prods.,* the court permitted late claimants to share in the settlement proceeds, even though doing so reduced the recovery of

3

another claimant by 16.6%, or over $1.6 million.  *Id.* at 155.[1]   Here, late claims comprise 19% of the total Recognized Claim Amounts for all valid claims.  *See* Coggeshall Decl. ¶¶22-23.

There is no indication that the late claimants acted in anything other than good faith. Thus, it is equitable to permit these claimants to share in this historic settlement.  District courts within the Third Circuit have permitted payment of late claims in similar circumstances.  *See, e.g., Weber v. Gov't Emps. Ins. Co.,* 262 F.R.D. 431 (D.N.J. 2009) (approving payment of late claims); *see also Orthopedic Bone Screw,* 246 F.3d at 323 (finding that the district court abused its discretion in excluding a late claimant from sharing in the settlement recovery).  Further, late claims are routinely included in settlement distributions in other district courts around the country. *See, e.g., In re Am. Tower Corp. Secs. Litig.,* 648 F.Supp.2d 223, 225 (D. Mass. 2009) (approving payment of late claims).

Treating the late claims as valid means there are a total of 166 claimants that will receive distributions ("Direct Purchaser Claimants").   Coggeshall Decl. ¶¶ 23-24.

### C. The Court Should Authorize Distribution to Direct Purchaser Claimants.

#### 1. Plaintiffs Request Authorization for Rust To Distribute Checks To Direct Purchaser Claimants.

Plaintiffs submit that the administration of the settlement has complied with the terms of the Settlement Agreement and the orders of this Court.  Accordingly, Plaintiffs respectfully request that Rust be authorized to distribute checks to the Direct Purchaser Claimants.  For claims that are in dispute where there remain questions as to eligibility, Plaintiffs recommend that distribution in the amount of $3,575,147 be reserved.  *Id.* ¶ 31.  This amount represents the total

---

[1] *See also id.* at 156 ("[T]he Court has an obligation not to elevate the claims of any class member over the claims of other class members, no matter how large a class member's stake in the case might be.").

amount of the three claims if they are paid in full.  *Id.*   After questions about these claims are resolved, Rust will distribute the reserved funds as ordered by the Court.   *Id.*

### D. The Court Should Authorize Payment of Rust's Outstanding Claims, Administration Expenses and Reserve of Estimated Expenses.

Rust has provided Class Counsel with an invoice detailing the fees and expenses it has incurred to date to administer the claims of the Direct Purchasers.  *Id*. ¶ 27, Ex. J.   Class Counsel have reviewed the invoice and believe the fees and expenses are reasonable.   Plaintiffs respectfully request that the Court authorize payment to Rust of $56,009.58 from the Direct Purchaser Class Net Settlement Fund.  *Id.*

Further, Rust estimates the fees and expenses it will incur to distribute funds to the Direct Purchaser Claimants is $31,250.  *Id.* ¶ 28.   Plaintiffs propose that this amount be reserved in addition to $134,804 for the payment of anticipated future expenses, funds paid to the IRS and estimated future taxes, Escrow Agent fees, and claims administration expenses.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Distribution Order.

Dated:   June 21, 2013                                    Respectfully submitted,

By:  /s/ John A. Maher
John A. Maher
LAW OFFICES OF JOHN A. MAHER
450 Springfield Avenue
Summit, NJ   07901-3626
Telephone:   (908) 277-2444

*On Behalf of All Class Counsel*

5

>Jared B. Stamell
>Stamell & Schager, LLP
>1 Liberty Plaza, 23rd Floor
>New York, New York 10006
>(212) 566-4047
>
>*Counsel for Direct Purchaser Class Counsel*