UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY
_____

| | |
|---|---|
| SHAWN SULLIVAN, et al., on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Civil Action Index No. |
| -against- | 04-02819 (SRC) |
| DB INVESTMENTS, INC., et al., | *Electronically Filed* |
| Defendants. | |

_____


**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR AN ORDER APPROVING A SECOND DISTRIBUTION OF SETTLEMENT
FUNDS TO THE INDIRECT PURCHASER RESELLER SUBCLASS**

## **TABLE OF CONTENTS**

**PAGE**

I. BACKGROUND ................................................................................................................ 2

II. DISCUSSION .................................................................................................................... 3

    A. The Court Should Authorize A Second Distribution Of The Reseller Subclass Net Settlement Fund To Authorized Reseller Claimants. ....................................... 3

    A. The Court Should Deny The Claims Of Claimants Who Failed To Cash Initial Distribution Checks Despite Rust's Diligent Outreach Efforts .................... 4

    B. The Court Should Authorize Payment Of Rust's Outstanding Claims Administration Expenses And Authorize Reserve Of Estimated Expenses. .......... 5

III. CONCLUSION .................................................................................................................. 6

Counsel for the Indirect Purchaser Reseller Subclass ("Resellers" or "Reseller Subclass") submit this memorandum in support of the Reseller Subclass's unopposed motion for the Court to enter the accompanying [Proposed] Order Approving the Second Distribution of the Indirect Purchaser Reseller Subclass Net Settlement Fund ("Second Distribution Order"). This Motion is supported by this memorandum; the accompanying declaration of Joseph J. Tabacco, Jr. ("Tabacco Decl."); and the accompanying declaration of Daniel Coggeshall of Rust Consulting, Inc. ("Rust"), the Court-approved claims administrator. The present Motion relates only to distribution to the Reseller Subclass.

If approved, the Second Distribution Order will, *inter alia*:

(i) Direct distribution of the funds remaining in the Reseller Subclass Net Settlement Fund ("Reseller Settlement Fund") to Authorized Reseller Claimants ("Claimants") who cashed one or more of their checks received during the Court-approved Initial Distribution;

(ii) Deny the discrete number of claims, and deny any other recourse, for Claimants who did not cash their Initial Distribution checks despite Rust's diligent efforts to ensure such checks were cashed;

(iii) Authorize payment to Rust for claims administrative services incurred in connection with the Initial Distribution; and

(iv) Authorize Reseller Counsel to reserve sufficient amounts to pay for claims administration, taxes, and accounting fees anticipated to be incurred in connection with the Second Distribution.

**I.   BACKGROUND**

*Settlement Approval*

Plaintiffs achieved a historic settlement with Defendant De Beers S.A. and certain of its affiliates (together, "De Beers"), which established a $295 million settlement fund to compensate class members for their injuries caused by De Beers's alleged monopoly of the worldwide supply of gem diamonds, provided for a stipulated injunction restraining De Beers from engaging in specified anticompetitive conduct, and subjected De Beers for the first time in history to the jurisdiction of a federal court in the United States to enforce the terms of the settlement and to obtain relief in the event of any future anticompetitive conduct. After four years of appeals, on May 21, 2012, the last application to the Supreme Court was denied, all appeals had been exhausted, and the settlement—and this Court's May 22, 2008 order approving the settlement—became final.

*Initial Distribution of Settlement Funds*

On August 10, 2012, the Court approved an initial two-step distribution of funds to the Reseller Subclass ("Initial Distribution"). The first round of the Initial Distribution provided for payment of 85% of the Reseller Settlement Fund to Claimants. The second round provided for distribution of the remaining 15% of the Reseller Settlement Fund to Claimants. However, any Claimant whose second round distribution would have been less than $25 received a single payment representing 100% of the Claimant's *pro rata* share during the first round of the Initial Distribution. Rust carried out the first round in late August 2012, and the second round in March 2013. Coggeshall Decl. ¶¶ 4-7. In total, Rust issued 11,810 checks during the Initial Distribution, representing payments to Claimants totaling $111,401,207.87. *Id.* ¶ 7.

*Claims Administration and Outreach Efforts*

Throughout and after the Initial Distribution, Rust has undertaken diligent outreach efforts to ensure Claimants cashed their checks. Rust's efforts included: (1) emailing and/or telephoning Claimants who had not cashed their Initial Distribution checks; (2) using an address locator service to determine updated addresses for returned checks, and reissuing such checks; and (3) reissuing checks to Claimants at their request because, for example, the check stale date had expired, the Claimant indicated no receipt of a check, or the Claimant requested the check be put in a different name due to a change in the company name. Coggeshall Decl. ¶¶ 8-9.

Despite Rust's best efforts, however, 255 Claimants failed to cash their checks. Coggeshall Decl. ¶ 10. Rust, at counsel's direction, has made attempts to contact each of these Claimants by email or telephone (provided Rust had such contract information). Coggeshall Decl. ¶ 11. All deadlines to cash checks have passed. Due to these uncashed checks, the Reseller Settlement Fund has a balance of approximately $1.19 million. *Id.* ¶ 14. Reseller Counsel seeks approval for a Second Distribution to Claimants who cashed at least one of their Initial Distribution checks.

## II.   DISCUSSION

### A.   The Court Should Authorize A Second Distribution Of The Reseller Subclass Net Settlement Fund To Authorized Reseller Claimants.

The Reseller Subclass submits that the administration of the settlement has complied with the terms of the Settlement Agreement and the Orders of this Court. Accordingly, Resellers respectfully request that Rust be authorized to send out a Second Distribution of checks to Claimants.

Under the Second Distribution, Rust will issue checks on a *pro rata* basis to Claimants who: (i) cashed one or more Initial Distribution checks, and (ii) would receive a Second

3

Distribution check for at least $25. *Id*. at ¶15. Claimants will have 60 days within which to cash their Second Distribution checks. *Id.* At the 30-day mark, Rust will contact those who have not cashed their checks by telephone or email to encourage them to do so. *Id.*

Consistent with the Notice and the Court-approved Plan of Allocation, Claimants whose Second Distribution payments would fall below the minimum $25.00 check amount will not receive a payment as part of the Second Distribution. *See* Notice at 10. There are 2,672 Claimants who are eligible to receive a payment during the proposed Second Distribution. *Id.*

Additionally, Reseller Counsel respectfully request that payment be authorized to one particular Claimant who received no payment as part of the Initial Distribution. It has come to the attention of Rust and Reseller Counsel that one Claimant, Choo Choo, Inc., timely mailed in its claim, but such claim was never actually received by Rust. Coggeshall Decl. ¶ 13. Choo Choo, Inc., however, has provided Rust with proof of mailing of its claim. *Id.* ¶ 13. Given that sufficient funds are available in the Reseller Settlement Fund, and that Choo Choo Inc. has provided satisfactory proof of mailing, Rust and Reseller Counsel recommend and respectfully request authorization to pay Choo Choo, Inc.'s claim as part of the Second Distribution.

**B.     The Court Should Deny The Claims Of Claimants Who Failed To Cash Initial Distribution Checks Despite Rust's Diligent Outreach Efforts**

As discussed above and in the Coggeshall Declaration, Rust undertook diligent efforts throughout the claims administration process to encourage Claimants to cash their Initial Distribution checks. Despite these efforts, certain Claimants did not cash any of the checks received during the first or second rounds of the Initial Distribution. Reseller Counsel respectfully request that the Court deny these claims and provide no further recourse for Claimants who did not cash at least one Initial Distribution check. Reseller Counsel further

request that the settlement funds attributable to these claims be reallocated to the Claimants who will receive checks in the Second Distribution.

### C. The Court Should Authorize Payment Of Rust's Outstanding Claims Administration Expenses And Authorize Reserve Of Estimated Expenses

The Court previously authorized Reseller Counsel to reserve $92,515 for Rust's anticipated fees incurred in connection with the Initial Distribution, and authorized additional reserves for accounting and tax related costs. *See* Aug. 10, 2012 Order at 3. Such reserves were held in an escrow account at Citibank. Reseller Counsel have transferred all remaining reserves—totaling $77,620—to the distribution account overseen by Rust in anticipation of the proposed Second Distribution. Tabacco Decl. ¶ 3.

To date, Rust has outstanding expenses of $95,852.27. Coggeshall Decl. ¶ 16. Reseller Counsel has reviewed Rust's invoices and determined them to have been necessarily incurred and reasonable in amount. Reseller Counsel thus respectfully requests that Rust's outstanding expenses be reimbursed first from the $77,620 in reserves, and then from the residual funds remaining in the Reseller Settlement Fund prior to the Second Distribution.

Further, Rust will incur additional expenses in connection with carrying out the Second Distribution. Rust estimates that it will cost $36,500 to carry out the Second Distribution. Coggeshall Decl. ¶ 16. Based on this estimate, Reseller Counsel respectfully request authorization to reserve $36,500 to cover these future claims administration expenses.

Finally, Reseller Counsel expects that it will cost $2,876.09 to prepare tax returns for the Reseller Settlement Fund, based on estimates received from Damasco & Associates, the accounting firm selected by Reseller Counsel to prepare such returns. Tabacco Decl. ¶ 4. Reseller Counsel thus respectfully request authorization to reserve $2,876.09 for payment of future accounting services.

**III.     CONCLUSION**

For the foregoing reasons, the Reseller Subclass respectfully requests that the Court enter the proposed Second Distribution Order.

Dated: December 4, 2014

Respectfully submitted,

By: /s/ John A. Maher

John A. Maher
LAW OFFICES OF JOHN A. MAHER
450 Springfield Avenue
Summit, New Jersey 07901-3626
Telephone: (908) 277-2444

Joseph J. Tabacco, Jr.
BERMAN DeVALERIO
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200

Susan G. Kupfer
GLANCY BINKOW & GOLDBERG LLP
One Embarcadero Center, Suite 760
San Francisco, CA 94111
Telephone: (415) 972-8160

*Counsel for the Indirect Purchaser Reseller Subclass*